[L. A. No. 27804. In Bank. Aug. 15, 1966.]

ATLANTIC NATIONAL INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. JOSEPH A. ARMSTRONG, as Administrator, etc., Defendant and Appellant; DARLINE McKEOWN et al., Defendants, Cross-complainants and Appellants; THE HERTZ CORPORATION, Cross-defendant and Respondent.

---

Betts & Loomis and Ingall W. Bull, Jr., for Defendant and Appellant and for Defendants, Cross-complainants and Appellants.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Plaintiff, Cross-defendant and Respondent.

No appearance for Cross-defendant and Respondent.

MOSK, J.—Defendants and cross-complainants appeal from a declaratory judgment for plaintiff and cross-defendants in an action to determine the rights of the parties under an insurance policy. The primary issue is whether an insurer is permitted to exclude from a motor vehicle liability policy coverage for injuries sustained by occupants of the insured automobile. We have concluded that such an exclusion is contrary to the public policy set forth in *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], and that plaintiff is obligated under the policy to satisfy any judgment which the heirs of decedent may recover for his fatal injuries against the driver of the insured automobile.

The relevant facts are undisputed. On August 7, 1958, Kenneth McKeown rented an automobile from the Hertz Corporation in Bakersfield. On August 17, 1958, the automobile collided with a vehicle driven by Norman Sobel. At the time of the accident McKeown was sitting on the passenger side of the front seat, and the car was driven by Robert Stanley. Both McKeown and Stanley were killed.

Following the accident Sobel filed an action for damages against the estates of Stanley and McKeown, and McKeown's heirs filed a wrongful death action against Stanley's estate. Plaintiff, Atlantic National Insurance Company, then filed the present action for a declaratory judgment to determine the scope of its obligations with regard to these suits. The trial court found that plaintiff insurer was obligated to defend the McKeown and Stanley estates in the action brought by Sobel

and to pay any judgment which Sobel obtained to the extent of the policy limits. Plaintiff did not appeal from this portion of the judgment. The trial court also declared that plaintiff was not obligated either to defend the action brought for the wrongful death of McKeown or to pay any judgment rendered in that action. It is this portion of the judgment with which we are now concerned.

Preliminarily, we should note that the present action does not raise the question whether Stanley's estate is liable for the death of McKeown; that question will be determined in the action which has been brought by the heirs of McKeown and which is currently pending. Rather, our present inquiry is limited to ascertaining whether plaintiff is obligated to defend Stanley's estate and to bear any liability imposed upon the estate as a result of that action.

■ The rental agreement which McKeown signed when he assumed possession of the automobile provides that "The renter . . . participates in the benefits of an automobile public liability and property damage insurance policy subject to the terms, conditions, limitations and restrictions thereof and is bound by such terms, conditions, limitations and restrictions even though all of them are not outlined in this rental agreement." The agreement also states that the renter will comply with all terms and conditions of the insurance policy and of the rental agreement itself. Among the terms printed on the reverse side of the rental agreement is the statement that the vehicle shall not be used or operated by any person other than the renter, his family, or an employer or employee of the renter. Still another provision of the rental agreement recites that the policy of insurance does not cover the renter or driver for injuries sustained by any person while riding in the rented vehicle. In jurisdictions in which the policy is required by law to insure the renter or driver against such liability, the renter is to indemnify the insurance company for any liability which it sustains for injuries to occupants of the vehicle.

The trial court found that the insurance policy to which the rental agreement refers was not to be found in the state at the time the car was rented, and McKeown obviously had no opportunity to examine it. Its relevant provisions are generally consistent with those contained in the rental agreement and need not be enumerated in detail here. However, it should be noted that by its terms the policy is to be deemed amended so as to comply with any applicable motor vehicle financial responsibility law.

The trial court made no finding as to whether Stanley was

one of those persons specifically designated by the policy as an insured driver. However, the court correctly concluded that he could not be excluded from coverage under the policy. ■ Vehicle Code section 415[1] requires motor vehicle liability policies to provide coverage for the liability not only of the named insured but of any other person using the vehicle with the express or implied permission of the insured.[2] In *Wildman* v. *Government Employees' Ins. Co.* (1957) *supra,* 48 Cal.2d 31, 39, we held that the public policy of the state requires that the provisions of these statutes be read into every motor vehicle liability policy. *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640], reaffirmed our decision in *Wildman* and held that subsequent amendments to Vehicle Code section 415 had not been intended to revoke the public policy of providing compensation for persons who are injured on the highways through no fault of their own.

*Financial Indem. Co.* v. *Hertz Corp.* (1964) 226 Cal.App.2d 689 [38 Cal.Rptr. 249], was a declaratory judgment action to determine the liability of the Hertz Corporation and the Atlantic National Insurance Company arising out of the negligence of a person who was driving with the permission of the renter of the automobile but was not within the class of persons designated by the policy as insured drivers. It was held that the *Wildman* and *Interinsurance Exchange* cases were controlling and that the restriction of coverage to certain classes of permissive users was invalid. The court also noted that the public policy considerations set forth in these cases are particularly persuasive as applied to companies "engaged in the business of placing . . . cars in the hands of others for a profit determined solely by the number of miles driven, without regard to the identity of the actual operator. . . ." (*Financial Indem. Co.* v. *Hertz Corp., supra,* at p. 699.)

It would seem that mandatory insurance of permissive drivers is beneficial to them as well as to those who may be injured. Persons driving an automobile owned by another generally have no opportunity to examine the owner's insurance policy and must rely upon the normal assumption that the policy contains no unusual exclusions or conditions, and fully implements the financial responsibility laws. Such

---

[1]The Vehicle Code was recodified in 1959. However, for convenience all citations in this opinion will refer to the code as it existed at the time of the accident, unless otherwise specified.

[2]This provision is now contained in Vehicle Code section 16451.

reasonable reliance on the part of permissive users of automobiles provides an additional ground for viewing with skepticism any attempt by an insurer to circumvent the provisions of Vehicle Code section 415.

■ Applying the foregoing herein, the provision in the insurance policy purporting to limit coverage to certain classes of permissive users is invalid and the policy must be deemed to be amended so as to comply with Vehicle Code section 415. It is not denied that as so amended the policy extends coverage to Stanley and his estate.

Plaintiff insists that even though Stanley is an insured driver under the policy, the company has no obligations with regard to the action brought by McKeown's heirs against Stanley's estate because of the exclusion from the policy of liability arising out of injuries to occupants of the insured vehicle. It is urged that motor vehicle liability insurers may at their discretion limit the class of persons whose injuries are compensable, without violating any statute in so doing.

The foregoing contention places too narrow a construction on the language of Vehicle Code section 415 and on the relevant decisions. ■ A primary purpose of financial responsibility laws is to protect ''that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of the highways by others.'' (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]; see *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) *supra*, 58 Cal.2d 142, 153; *Wildman* v. *Government Employees' Ins. Co.* (1957) *supra*, 48 Cal.2d 31, 39.) This goal is no less subverted by limiting the class of persons whose injuries are compensable than by limiting the class of drivers who are insured. Either type of exclusion forces the injured person to rely exclusively upon the financial resources of the driver or owner in seeking compensation for his injuries. Thus, all the considerations which underlie *Wildman* and *Interinsurance Exchange* apply with equal force to the case at hand.

■ It is true that the relevant statutes omit any detailed description of the persons whose injuries must be compensated under a motor vehicle liability policy, while specifying that permissive drivers must be covered. However, it does not follow that the Legislature intended to leave the description of the class of persons whose injuries are compensable wholly to the discretion of private parties. As has been said with regard to an analogous issue, ''The statute is founded upon principles

of public policy and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by . . . private agreements. . . ." (*Malmgren* v. *Southwestern Auto. Ins. Co.* (1927) 201 Cal. 29, 33-34 [255 P. 512].)

Vehicle Code section 415 provides that a motor vehicle liability policy shall insure "against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle . . . to the extent and aggregate amount, . . . of ten thousand dollars ($10,000) *for bodily injury to or death of each person* as a result of any one accident and, . . . twenty thousand dollars ($20,000) *for bodily injury to or death of all persons* as a result of any one accident. . . ." (Italics added.) It would seem most consistent with the purposes of the statute to interpret the quoted language as not only prescribing the minimum monetary limits of coverage but as also defining the risks which must be covered. Thus interpreted, the section appears to prohibit insurance policies from excluding liability to a person who is injured by the negligence of an insured driver unless such an exclusion is permitted by some other provision of law. (See, e.g., Vehicle Code, section 415, subdivision (e),[3] which permits the exclusion of liability assumed by or imposed upon the insured under workmen's compensation laws.) ▪ No law permits the exclusion of liability for injuries sustained by all occupants of an insured automobile; therefore, the exclusion to that effect found in plaintiff's insurance policy violates Vehicle Code section 415 and is invalid.

We need not decide the validity of exclusions which relate to matters other than the class of persons protected but which have the incidental effect of excluding liability to certain injured persons. An example of such an exclusion is found in *American Motorists Ins. Co.* v. *Moses* (1952) 111 Cal.App.2d 344 [244 P.2d 760], in which the court gave effect to an exclusion of liability arising while the insured vehicle was being used as a public or livery conveyance, even though the incidental effect of the exclusion was to deny the benefits of the policy to injured passengers. The decision is distinguishable from the present case in that the exclusion related directly to the scope of the contemplated use of the vehicle rather than to the class of beneficiaries protected. ▪ In the case before us it cannot be doubted that the parties envisaged the occasional presence in the automobile of persons other than the driver,

---

[3]Now Vehicle Code section 16454.

and there is no suggestion that at the time of the accident the automobile was being used for a purpose outside the contemplation of the parties. Thus, the provisions of Vehicle Code section 415 are controlling.

■ Plaintiff asserts that even if the exclusion of liability to all occupants of the vehicle is invalid, the policy does not cover liability of Stanley's estate for McKeown's death because McKeown was himself an insured under the policy. Cases from other jurisdictions are cited as holding that liability insurance applies only to liability for injuries sustained by persons other than the insured. (See *Cain* v. *American Policyholders' Ins. Co.* (1936) 120 Conn. 645, 654 [183 A. 403]; *Oliveria* v. *Preferred Acc. Ins. Co.* (1942) 312 Mass. 426, 428 [45 N.E.2d 263, 143 A.L.R. 1391]; *MacBey* v. *Hartford Acc. & Indem. Co.* (1935) 292 Mass. 105, 107 [197 N.E. 516, 106 A.L.R. 1248].) However, those cases are distinguishable in that they involved a Massachusetts statute which provides that motor vehicle liability policies need insure only against liability of the insured "to others." Neither Vehicle Code section 415 nor the policy involved here contain such words and, therefore, these cases provide little guidance in determining whether McKeown's injuries are compensable under the policy.

*Bachman* v. *Independent Indem. Co.* (1931) 214 Cal. 529 [6 P.2d 943], dealt with issues more closely related to those in the instant case. The decedent was killed while riding in her automobile, which was being driven by her son-in-law at the time of the accident. Her administrator had obtained a judgment against the driver and in the reported case was attempting to collect the judgment from the defendant company which had issued a policy insuring decedent and those operating the vehicle with her permission against liability for bodily injuries sustained by any person or persons. The defendant contended that the policy did not insure against liability for the death of an insured, but the argument was rejected. The court stated (at pp. 530-531), "The policy insures for loss arising out of liability of the person operating the automobile to *any person or persons*. Are the children of Mrs. Bachman included within the meaning of this provision? This depends upon whether [the driver] is liable to them. . . . [P]laintiff did sue and did recover a judgment against [the driver], which judgment is final, and is a liability of a person who operated the car with the permission of the insured. The law permits the party who recovered this judgment to sue the insurance company." (Italics in original.) (Accord, *Farmer* v. *United States Fidel-*

*ity & Guaranty Co.* (D.C. M.D. Ala. 1935) 11 F.Supp. 542, 543; *Union Automobile Ins. Co.* v. *Samelson* (1922) 71 Colo. 479, 481 [207 P. 1113]; *Howe* v. *Howe* (1935) 87 N.H. 338, 341 [179 A. 362]; *Archer* v. *General Casualty Co.* (1935) 219 Wis. 100, 103 [261 N.W. 9]; *Hardtner* v. *Aetna Casualty & Surety Co.* (La.App. 1939) 189 So. 365, 376.) *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal.App.2d 150, 153 [34 Cal.Rptr. 406], reached a similar result.

Plaintiff attempts to distinguish *Bachman* by the fact that the policy issued by Atlantic did not contain a comprehensive omnibus clause providing coverage for all permissive drivers. It is argued that Stanley was an insured driver only because of the provisions of Vehicle Code section 415 and, therefore, that the policy covers liability for his negligence only to the extent required by law. It is further asserted that subdivision (e) of Vehicle Code section 415 permits the exclusion of liability for injuries to the insured.[4] Plaintiff concludes that since the death of McKeown was not a risk which the policy was required by law to cover, the invalid exclusion of liability to occupants of the vehicle should be given effect, to the extent that it does not violate public policy, by reading into the insurance policy an exclusion of liability for the death of McKeown in his status as an insured.

We need not decide whether Vehicle Code section 415, subdivision (e), does in fact permit exclusion of liability for injuries sustained by an insured, nor need we decide whether the invalid exclusion of liability to occupants is void or is merely unenforceable to the extent it violates public policy. (Cf. *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) *supra*, 58 Cal.2d 142, 147-148.) Even if these premises of plaintiff's argument are correct, nevertheless its conclusion must be rejected.

The critical flaw in plaintiff's contention is that there is no indication that the proposed interpretation reflects the intent of the parties. If public policy permitted the exclusion of liability to certain classes of occupants but prohibited a comprehensive exclusion of all occupants, and if McKeown were a member of the category which could be excluded, we might be justified in reading the narrower exclusion into the policy since the parties had expressed the intention of excluding the

---

[4]This subdivision provides in relevant portion, ''Any liability policy issued hereunder need not cover any liability for injury to the assured or any liability of the assured assumed by or imposed upon said assured under any workmen's compensation law. . . .'' These provisions are now contained in Vehicle Code section 16454.

broader category within which the narrower was encompassed. However, the fact that McKeown was an insured driver under the policy is logically unrelated to the fact that he was an occupant of the car at the time of the accident. There is no narrow division contained within a broad category. Therefore, it cannot be presumed that the parties intended to exclude liability to McKeown because of his status as an insured merely because the policy contains an exclusion of liability for occupants.

Plaintiff's interpretation of the policy would lead to anomalous results. If McKeown had not been riding in the car at the time of the accident but instead had lent the car to Stanley and had been injured while crossing the highway, nothing in the policy would exclude liability for his injuries or death. Thus it would follow from plaintiff's interpretation of the policy that McKeown would be a beneficiary while outside the automobile but that he, and only he, would be excluded as a beneficiary while riding in the car. If the policy was intended to so provide, its wording is at the least ambiguous, and ambiguities in an insurance policy must be resolved against the insurer who drafted the document. (*Wildman* v. *Government Employees' Ins. Co.* (1957) *supra*, 48 Cal.2d 31, 37; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) *supra*, 46 Cal.2d 423, 437; *Bachman* v. *Independent Indem. Co.* (1931) *supra*, 214 Cal. 529, 531.) Therefore, we cannot adopt plaintiff's interpretation.

Although Stanley was an insured driver under the policy and McKeown was not excluded as a beneficiary, plaintiff maintains that it nevertheless is not obligated to pay any judgment which the heirs of McKeown may obtain against Stanley's estate since the rental agreement provides that McKeown will indemnify plaintiff for any payments made to compensate for injuries to occupants of the insured automobile or arising while the automobile is being driven by other than specified persons. It is claimed that this agreement is binding not only on McKeown's administrator but on his heirs who have brought the wrongful death action.

This issue involves still other considerations than those which have been discussed. The general purposes of Vehicle Code section 415 are to protect innocent persons injured upon the highways, and to secure insurance coverage for permissive drivers who seldom have an opportunity to examine the terms of the policy covering the vehicle before taking the wheel and starting on their journey. The statute does not appear to be

designed primarily for the financial protection of the insured himself. Thus, *Wildman* v. *Government Employees' Ins. Co.* (1957) *supra,* 48 Cal.2d 31, and *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) *supra,* 58 Cal.2d 142, are not directly relevant to this issue of indemnity. However, it appears that the wording of the policy ambiguously describes plaintiff's obligations with respect to such liability and that this ambiguity must be resolved in favor of the insured. Although the indemnification clause appears to release plaintiff from ultimate liability for injuries sustained by occupants of the car when read in isolation, ambiguities become apparent when this clause is read in the context of the other provisions of the rental agreement.[5]

The rental agreement clearly provides that McKeown is an insured under an insurance policy issued by plaintiff. However, the indemnification clause is so broad that it raises a serious question as to whether the contract can properly be described as a policy of insurance. The indemnification clause shifts to the renter not only the ultimate liability for all injuries to occupants of the vehicle, but also provides that the renter shall indemnify the company for any loss incurred because of injuries resulting from the use of the automobile in violation of any of the terms of the agreement. Among these terms is the prohibition against the vehicle being operated in violation of any federal, state, or municipal law. Thus, if the indemnification agreement is given its full effect, plaintiff would be precluded from seeking indemnity from the renter only in the unlikely event that the liability arose out of injuries to persons other than occupants of the insured vehicle while the automobile was being operated by one of a small class of persons and the negligent conduct out of which the liability arose violated no federal, state or municipal law, including, of course, the Vehicle Code, sections 1 through 42273.

Insurance Code section 22 defines the word "insurance" as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Insurance Code section 23 provides that "the person indemnified is the insured." We are not here

---

[5]The clause states that "Renter further expressly agrees to indemnify the Insurance Company for any and all loss . . . incurred by the Insurance Company because of injuries or damages sustained by occupants of said vehicle . . . or because of injuries or damages resulting from the use or operation of said vehicle in violation of the terms and conditions appearing on the reverse side hereof."

concerned with technical aspects of these definitions, but the language of the statutes is significant in that it would appear to reflect the common understanding of the general public concerning the meaning of the defined words.

To the extent that it obligates McKeown to indemnify plaintiff, the indemnification clause would appear to be inconsistent with the rental agreement which provides that it is McKeown who is the insured under the policy. If such indemnification were a minor aspect of the agreement, and if the clause were prominently set forth in a manner calculated to attract the notice of the renter, we might have a different enforceability problem. But where, as here, the indemnification clause is so broad as to shift ultimate liability to the ''insured'' in all situations likely to occur, and where the clause is set forth inconspicuously in small print, an ambiguity is created concerning both the nature of the agreement and the intent of the parties.

As applied to the facts of the present case the wording of the policy is also ambiguous in another respect. The word ''indemnify'' is not generally used to refer to an agreement by a person to forego the collection of payments which would otherwise be due him. Such an agreement is more properly described as a waiver or a release. Thus, it is not clear whether in agreeing to indemnify plaintiff for payments which it might make to injured occupants of the vehicle, the parties intended that McKeown would reimburse plaintiff company for payments which might be owed to him.

In interpreting an insurance contract we must consider the intent and reasonable expectations of the parties in entering into the agreement. Hence, we must evaluate not only plaintiff's contract form, but also McKeown's knowledge and understanding as a layman and his normal expectation of the extent of coverage of the policy. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 869 [27 Cal.Rptr. 172, 377 P.2d 284].) It cannot be doubted that he intended to relieve himself of liability which might arise out of the operation of the automobile, for surely he did not enter into the contract solely for the benefit of strangers who might be injured.

The trial court found that the Hertz Corporation, the *alter ego* of plaintiff, represented that it provided ''proper insurance'' in advertisements designed to induce members of the public to patronize the company, and this finding is relevant in determining the intent of the parties who signed the rental contract. The term ''proper insurance'' clearly implies

that the insurer will assume ultimate liability for all risks which are required by law to be covered by a motor vehicle liability policy. As has been noted, Vehicle Code section 415 prohibits the exclusion from such a policy of liability for injuries sustained by occupants of the insured vehicle. Therefore the provision that the renter will indemnify the insurer for assuming liability for such injuries is inconsistent with the representations in the advertisement. Since we cannot assume that the company intended to misrepresent the benefits afforded to the renter, we find the policy ambiguous in that regard.

After considering the reasonable expectations of the parties, the representations made by Hertz Corporation, and the ambiguities in the wording of the rental agreement and of the insurance policy, we conclude that the policy must be interpreted as insuring Stanley's estate against liability for the death of McKeown and that the indemnification clause in the policy does not prevent the heirs of McKeown from requiring that plaintiff satisfy any judgment which is rendered in the wrongful death action, to the extent of the policy limits.

The portion of the judgment declaring that plaintiff has a duty to defend that action numbered 723942, and to pay any judgment rendered therein to the limits of the policy of insurance is affirmed. That portion of the judgment declaring that plaintiff has no obligation to continue its defense in the action numbered 727578, or to pay any judgment rendered in that action is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.