[Civ. No. 34649. First Dist., Div. One. Feb. 4, 1976 ]

EUGENE A. AAS et al., Plaintiffs and Appellants, v.
AVEMCO INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Crist, Crist, Griffiths, Bryant & Schulz, Robert E. Schulz and Edward M. Keech for Plaintiffs and Appellants.

Kirtland & Packard and Robert E. Moore, Jr., for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Plaintiffs, the surviving husband and children of Rosemary E. Aas, who was killed in an airplane crash, have appealed[1] from an order of the trial court which dismissed their action against defendant insurer, upon granting defendant's motion for judgment on the pleadings, and

---

[1] The notice of appeal recites "Eugena A. Aas, *defendant*, appeals" etc. Since it refers to the judgment which ordered *"plaintiffs'* action" to be dismissed, and is signed "Attorney for Plaintiffs," we have treated the appeal as being interposed on behalf of all the plaintiffs named in the complaint.

denying plaintiffs' motion for summary judgment. Plaintiffs, who have recovered a judgment against the estate of the pilot of the airplane, contend that the parties to the insurance policy contracted with a view toward the then-existing airplane guest statute, and that since the statute was subsequently respectively, repealed and found unconstitutional, the clause excluding liability to occupants should be construed as invalid. A review of applicable principles of law compels a conclusion, on the contrary, that the subsequent law changes have no effect on the provisions of the policy. The order must be affirmed.

The policy provides: "Coverage A—Aircraft Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person,. *excluding any occupant unless specified as 'including occupants' in the declarations,* caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." (Italics added.)

The declarations refer to "A Aircraft Liability (*Ex*cluding Occupants) $ *NIL* each occupant $300,000 each occurrence *$77.00.*" The emphasized language is typed in. A rider, which named Rosemary Aas, and others, as additional insureds and designated the pilots whose liability would be covered by the policy, reiterates the same coverage and added $100,000 property damage under coverage A for an additional premium of $6.00.

The policy under "Definitions" states: "(a) Occupant. The word 'occupant' means any person in, on or boarding the aircraft for the purpose of riding therein or alighting therefrom following a flight or attempted flight therein."

At all times material the aircraft financial responsibility act has provided and now provides: "The policy or bond need not cover: . . . (c) "A guest, or any other person, riding in or upon any aircraft without giving compensation." (Pub. Util. Code, § 24351.[2]) The same law defines passenger as follows: " 'Passenger' means any person in, on or boarding an aircraft for the purpose of riding therein, or alighting therefrom following a flight or attempted flight therein." (Pub. Util. Code, § 24238.)

---

[2]The provisions of this section were reviewed in *National Ins. Underwriters* v. *Carter* (Cal.App. 1974) superseded by hearing granted November 13, 1974, L.A. 30384, argued June 17, 1975.

The policy period ran from June 28, 1969, to June 28, 1970. The airplane crash occurred January 2, 1970. At that time, the airplane guest statute,[3] which was in effect and considered constitutional, abrogated the common law right of a guest to recover for injuries as a result of a pilot's ordinary negligence. (See *Mittelman* v. *Seifert* (1971) 17 Cal.App.3d 51, 61 [94 Cal.Rptr. 654]; and *Stiles* v. *American Trust Co.* (1955) 137 Cal.App.2d 472, 474-475 [290 P.2d 614]. Cf. *Callett* v. *Alioto* (1930) 210 Cal. 65, 69 [290 P. 438].) The policy provision excluding liability to "occupants," therefore, approximated the statutory bar. The Legislature repealed the statute in 1973 (Stats. 1973, ch. 803, § 3, p. 1426), thereby restoring the common law right to sue. It has also been held that the statute was unconstitutional. (*Ayer* v. *Boyle* (1974) 37 Cal.App.3d 822, 826-828 [112 Cal.Rptr. 636]. See *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 882 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

No issue has been raised as to whether the deceased pilot, against whose estate the judgment was obtained, was an additional insured under the policy definition of "insured." It included permissive users, provided, according to the declarations, such use in flight is by a certificated private or commercial pilot. If the policy covered the loss suffered by plaintiffs from the death of Rosemary Aas, they were entitled to recover the amount of the judgment, which was within the policy limits, from the insurance company. (Ins. Code, § 11580, subd. (b)(2); *Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 803-807 [66 Cal.Rptr. 561]; *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 159-163 [331 P.2d 766]; *Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 631 [40 P.2d 311].) Nevertheless, it would appear from the clear language of the policy that the coverage excluded damages for the death of Rosemary Aas which occurred while she was an occupant of the airplane, riding therein. ■ "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. [Citations.]" (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Cravens, Dargon & Co.* v. *Pacific Indem. Co.* (1972) 29 Cal.App.3d 594, 600 [105 Cal.Rptr. 607]; *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 525 [88 Cal.Rptr.

[3]"A guest riding in or upon any aircraft without giving compensation, or any other person, does not have any right of action for civil damages against the airman flying the aircraft or against any other person otherwise legally liable for the conduct of the airman, on account of personal injury to, or the death of, the guest during such ride, unless the plaintiff in the action establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the airman." (Former Pub. Util. Code, § 21406: Stats. 1953, ch. 151, § 1, p. 934.)

246]; and *Fullerton v. Houston Fire & Cas. Ins. Co.* (1965) 234 Cal.App.2d 743, 750-751 [44 Cal.Rptr. 711].) Plaintiffs seek to avoid the plain meaning of the policy on several theories.

-A-

In *Travelers Ins. Co. v. Industrial Indem. Co.* (1971) 18 Cal.App.3d 628 [96 Cal.Rptr. 191], the plaintiff company had issued a general liability insurance policy to the employer of a worker who was injured in 1949 in the course of his employment when he came into contact with a utility's electric wire. After the worker recovered a judgment against the utility company, the latter sued the employer on the theory of implied indemnity. The plaintiff company provided a defense and demanded that the defendant company, which had issued workmen's compensation and employer's liability coverage to the employer, join in the defense. The latter company had agreed "To indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained . . . ." (P. 631.) The defendant claimed that the policy language limited the policy coverage to claims made directly by the employee against the employer. The trial court interpreted the language to include liability for indemnity claims of third parties against the employer which arose out of injuries to the latter's employee; and it awarded the plaintiff company a pro rata share of its outlay to litigate and settle the utility's claim against the employer. (See 18 Cal.App.3d at pp. 630-631.)

In 1949, when the injury occurred and when the policy was in effect, the courts of California had not recognized the right of a third party tortfeasor whose negligence concurred with that of the employer to recover from the negligent employer under the theory of implied indemnity. (See *S. F. Unified Sch. Dist. v. Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785].) The indemnity suit was commenced in 1962 after the decision last cited. The court on appeal noted that the case involved the question of "whether changes *in the scope of liability under an insurance policy,* resulting from court decisions handed down after a policy is issued, inure to the benefit of the policyholder." (18 Cal.App.3d at p. 631, italics added.) It answered the question as follows: "We conclude that where the *scope of liability covered by language contained in an insurance policy* has been enlarged by judicial pronouncement, the language defining coverage embraces the total liability ascribed to it by the courts, so long as the policy remains in force. At first blush this

appears to be a harsh rule, particularly here because of the extremely unusual circumstance that the policy was written in 1949 and liability is being determined some 20 years later. However, a contrary view would bring about an even more discordant result for it would mean that where courts enlarge liability during the effective period of a liability policy, *an insured who contracted for complete coverage of a possible risk* would be left without coverage because the scope of the risk had been enlarged by decisional law. Many examples come to mind where liability has been enlarged by a novel judicial interpretation of the law or by an expanded application of existing law. A good example is the liability of owners and occupiers of real property, as articulated in *Rowland* v. *Christian,* 69 Cal.2d 108 . . . ." (*Id,* p. 632, italics added.)

Reference to the emphasized language demonstrates that plaintiffs' reliance on the principle set forth in the last quotation is unavailing in this case. When the insurer agrees to indemnify the policyholder for "loss by reason of the liability imposed upon him by law" it may take the risk that the law will impose a greater liability than was contemplated at the time of contracting. Here, however, there never was such a broad promise of indemnity. A change in the liability of the insured with respect to nonpaying occupants of the airplane cannot affect an insurer who has never assumed any liability for damages because of bodily injury, sickness or disease, including death, to occupants.

Insofar as the terms of the policy itself are concerned, as distinguished from the liability of the pilot for his negligence, the following rule governs: "It is well settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 148 [23 Cal.Rptr. 592, 373 P.2d 640]. See also *Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270, 275 and 281-283 [121 Cal.Rptr. 694]; and *Mitchell* v. *National Auto. & Casualty Ins. Co.* (1974) 38 Cal.App.3d 599, 604-605 [113 Cal.Rptr. 391].)

-B-

█ Nor can plaintiffs successfully rely on the principle of strict construction of an exclusionary clause. It is a "fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." (*State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 201 [110 Cal.Rptr. 1, 514 P.2d 953].) The court added, "As we have declared time and again 'any exception to the

performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.' (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 . . .); thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language.' (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 . . .) The exclusionary clause 'must be *conspicuous, plain and clear.*' (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 . . .) (Italics added.)" (*Id.*, at pp. 201-202.) ■ On the other hand "courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. [Citations.]" (*State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 547 [95 Cal.Rptr. 296]. See also *Cook* v. *Penn Mutual Life Ins. Co.* (1963) 218 Cal.App.2d 194, 197 [32 Cal.Rptr. 400].)

■ In this case the limitation is in the coverage itself, and the policyholder's election to exclude or include protection for liability to occupants is clearly designated in the declarations by typewriting added to the printed form. There is no manifestation of the decried "practice of building into policies one condition or exception upon another in the shape of a linguistic Tower of Babel." (*Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 691 [63 Cal.Rptr. 382, 433 P.2d 174].)

-C-

Nor is there any ambiguity to be resolved in favor of the policyholder, pilot or the plaintiffs who claim under them. ■ In *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* the court also stated, "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer . . . . If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates . . . . If the insurer uses language which is uncertain, any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against . . . the amount of liability . . . or the person or persons protected . . . the language will be understood in its most inclusive sense, for the benefit of the insured." (46 Cal.2d at pp. 437-438, citations omitted. See also *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d 193, 203.)

■ On the other hand it must. be recognized, as stated in *Burr* v. *Western States Life Ins. Co.* (1931) 211 Cal. 568 [296 P. 273], "The terms of a contract are to be understood in their ordinary and popular sense

and as a man of average intelligence and experience would understand them." (211 Cal. at p. 575. See also *New York Life Ins. Co. v. Hollender* (1951) 38 Cal.2d 73, 81 [237 P.2d 510]; *Cook v. Penn Mutual Life Ins. Co., supra,* 218 Cal.App.2d 194, 197-198.) In the *New York Life Ins. Co.* case the court stated: "While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer [citations], the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed." (38 Cal.2d at p. 81. See also *American Motorists Ins. Co. v. Moses* (1952) 111 Cal.App.2d 344, 347-348 [244 P.2d 760].)

█ Here a reading of the policy raises no ambiguity. Any uncertainty is only that engendered by changes in the substantive law which may have provided new risks to be insured against, but which could not change the terms of the policy.

-D-

█ Plaintiffs suggest that if the parties had contemplated the change of the guest law they would have bargained for greater coverage, and that liability should be imposed in order to give effect to the expectations of the policyholder. "In interpreting an insurance contract we must consider the intent and reasonable expectations of the parties in entering into the agreement. Hence, we must evaluate not only plaintiff's contract form but also [the policyholder's] knowledge and understanding as a layman and his normal expectation of the extent of coverage of the policy." (*Atlantic Nat. Ins. Co. v. Armstrong* (1966) 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801]. See also *Insurance Co. of North America v. Electronic Purification Co., supra,* 67 Cal.2d 679, 688-689.) In this case, however, in the light of the clear provisions of the coverage, the declaration and the exclusion, as reviewed above, any construction of the policy which would provide coverage for damages incurred by reason of the wrongful death of a nonpaying occupant would be contrary to the intent and reasonable expectation of both insurer and insured. (See *Herzog v. National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841]; and *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., supra,* 9 Cal.App.3d 508, 517.) Here at the time of the issuance of the policy and at all times up to the time of the loss, each intended that the liability, if any, for damages to an injured occupant should not be covered even though that liability might arise in the event

of intoxication or wilful misconduct under the existing guest law. The fact that liability to a nonpaying occupant was broadened by judicial decision and statutory action could not broaden the express terms of the policy. The expectations to be considered are those at the time of contracting, not what might have been expected in the light of subsequent developments.

-E-

Finally the plaintiffs assert that the contract should be interpreted to cover the liability of the pilot to the occupant because of a public policy analogous to that which has been enunciated in the past in connection with automobile liability insurance. In *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* the court observed in connection with California's general automobile financial responsibility law, that it was "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." It concluded, "Such a law is remedial in nature and in the public interest is to be liberally construed to the end of fostering its objectives." (46 Cal.2d at p. 434. See also *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d 193, 205-206; *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 106 [52 Cal.Rptr. 569, 416 P.2d 801]; and *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, 153-154.) ■ Nevertheless, when the statutes governing the content of an insurance policy permit a limitation or exclusion, the validity of such exclusion cannot be questioned. (See Ins. Code, § 11580.1, cf. § 11584. Note, *Associated Indem. Corp.* v. *King* (1973) 33 Cal.App.3d 470, 472-474 [109 Cal.Rptr. 190]; *Donohoe* v. *Wilshire Ins. Co.* (1972) 26 Cal.App.3d 471, 473 [103 Cal.Rptr. 57]; *State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d 538, 542-546; and *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d 508, 520-526.)

Turning to the aircraft financial responsibility act (Pub. Util. Code, §§ 24230-24410) we find that it does not apply to "[A]ny person who maintains in effect an insurance policy meeting the requirements of Section 24350 and who has filed with the department a certificate of insurance issued by the insurance company which issued such policy." (§ 24243, subd. (f).) As we have noted, section 24351 provides, "The policy or bond need not cover: . . . (c) A guest, or any other person, riding in or upon any aircraft without giving compensation." The requirements for posting security after an accident do not apply: "(a) To the operator of

an aircraft involved in an accident in which no injury was caused to the person of anyone other than the operator or guests, . . . [¶] (d) To the owner if there is in effect at the time of the accident an aircraft liability policy or bond with respect to the aircraft involved in the accident. [¶] (e) To the operator, if not the owner of the aircraft, if there is in effect at the time of the accident an aircraft liability policy or bond with respect to his operation of the aircraft involved in the accident. [¶] (f) To the operator or owner if his liability for damages resulting from such accident is covered by any other form of liability insurance policy or bond in effect at the time of the accident." (§ 24327, subds. (a), (d), (e) and (f).) The only requirement for aircraft liability coverage found in the Insurance Code is a section which prohibits any provision which "shall exclude or deny coverage because the aircraft is operated in violation of federal or civil air regulations, or any state law or local ordinance." (Ins. Code, § 11584.)

■ There is no established legislative or other policy requiring that insurance be furnished to cover the aircraft owner's or operator's liability for damages for injury or death suffered by a guest or any other person riding in or upon any aircraft without giving compensation. It is, therefore, not appropriate to rewrite the policy to create such a liability.

-F-

The foregoing conclusions render it unnecessary to consider defendant insurance company's contention that despite the repeal of the aircraft guest statute there would be no liability to owner-occupant of the airplane on the part of a negligent operator to whom the owner had entrusted the operation of the aircraft. (See, e.g., *Patton* v. *La Bree* (1963) 60 Cal.2d 606, 608-609 [35 Cal.Rptr. 622, 387 P.2d 398]; and note *Schwalbe* v. *Jones* (Cal. 1975) rehg. granted June 11, 1975,█ involving the automobile guest law.) Since the aircraft guest law never had a clause which referred to "personal injury to or the death of the owner," the relevancy of those precedents may be questioned.

■ The order of the trial court denying plaintiffs' motion for a summary judgment, although not an appealable order, may be reviewed on their appeal from an adverse judgment. (Code Civ. Proc., § 906 [former § 956, repealed Stats. 1968, ch. 385, § 1, p. 811]; *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 241-242 [273 P.2d 5]; and *City of Oakland* v. *Darbee* (1951) 102 Cal.App.2d 493, 504-505 [227 P.2d 909].

Cf. *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 262 [83 Cal.Rptr. 237]; *Thompson* v. *Occidental Life Ins. Co.* (1969) 276 Cal.App.2d 559, 563 [81 Cal.Rptr. 37]; and *Nevada Constructors* v. *Mariposa etc. Dist.* (1952) 114 Cal.App.2d 816, 818 [251 P.2d 53]. See 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 195, p. 2842; and 6 *id.*, Appeal, § 34, p. 4048.) The ruling of the court having been in accordance with the principles outlined above, no error is found in the denial of plaintiffs' motion for summary judgment.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 31, 1976.