[No. B022639. Second Dist., Div. Three. June 24, 1987.]

MYRON BLUMBERG et al., Plaintiffs and Appellants, v. GUARANTEE INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

John P. Blumberg and Ave Buchwald for Plaintiffs and Appellants.

Cotkin, Collins & Franscell, William D. Naeve and Sheryl A. Weinstein for Defendant and Respondent.

OPINION

ARABIAN, J.—

## INTRODUCTION

Plaintiffs and appellants, Myron Blumberg and Myron Blumberg, a Law Corporation (Blumberg), appeal from a judgment dismissing their first amended complaint following the trial court's order sustaining the demurrer of defendant and respondent, Guarantee Insurance Company (Guarantee), without leave to amend. We affirm.

## FACTS

### *The Underlying Lawsuit.*

On July 16, 1977, Blumberg and his law partner, Kenneth Zommick (Zommick) dissolved their partnership pursuant to a "Memorandum of Agreement." The agreement set forth the manner in which the partnership would be dissolved and the partnership assets divided between them. By the terms of the agreement, they divided all matters being handled by the partnership into two categories, (1) pending and (2) substantially concluded.

A lawsuit listed as "pending" was billed as of May 31, 1977. The attorneys' fees generated from these cases were characterized as partnership assets which were to be divided equally between Blumberg and Zommick upon dissolution. Subsequently generated fees were then designated as the personal property of the attorney identified as handling the case on the date the law partnership dissolved.

All other lawsuits being handled by the firm were identified as "substantially concluded" and remained the property of the partnership of Blumberg & Zommick. Accordingly, the attorneys' fees generated by these cases were

to be equally divided between the two attorneys as they were received. Included in the pending category were a series of cases entitled "the Chamonix cases."

On June 21, 1981, Zommick filed a lawsuit against Blumberg for breach of the partnership. Zommick alleged that at the time the memorandum of agreement was executed and the partnership dissolved, Blumberg fraudulently misrepresented to him the status of the Chamonix cases. Specifically, Zommick alleged that Blumberg misrepresented that the Chamonix cases were pending, had no value, and that no attorneys fees could be recovered without substantial expenditure of time and money. In reliance on these representations, Zommick allegedly allowed the Chamonix cases to be classified as pending, whereby they became the personal property of Blumberg upon the dissolution of the partnership. Zommick alleged the Chamonix cases should have been characterized as substantially concluded, so that the attorneys fees generated by the Chamonix cases would remain a partnership asset to be distributed equally between the two partners when recovered.

Accordingly, Zommick's complaint alleged that Blumberg made misrepresentations, committed fraud, and breached his fiduciary duty to him, and prayed for damages of $225,000, one-half of the attorneys fees recovered by Blumberg when the Chamonix cases subsequently settled.

### The Subject Lawsuit.

When Blumberg was served with the Zommick complaint, he was insured under a claims-made "Lawyers Professional Liability Policy" issued to him by Guarantee. That policy provided basic coverage, under Insuring Agreement I, for claims: "arising out of ... any acts or omissions of the Insured in rendering or failing to render professional services *for others ... in the Insured's capacity as a lawyer ....*" (Italics added.)

Under Insuring Agreement V, the policy provided the following complementary fiduciary coverage: "When the insured acts as an administrator, conservator, executor, guardian, trustee or in any other similar fiduciary capacity, his acts and omissions in such capacity *shall be deemed for the purpose of Insuring Agreement I to be the performance of professional services for others in the Insured's capacity as a lawyer.*" (Italics added.)

Additionally, the policy contained the standard duty-to-defend language obligating Guarantee to defend any lawsuit lodged against the insured, whether groundless, false or fraudulent, as long as the claimant was seeking recovery of damages otherwise payable under the policy.

Under the bold-faced caption "EXCLUSIONS," the policy provides, under exclusion (h), that it does not apply: "to any claim arising out of or in connection with the conduct of any *business enterprise* (including the ownership, maintenance, or care of any property in connection therewith) owned by any Insured or in *which any Insured is a partner,* or which is directly or indirectly controlled, operated or managed by any Insured either individually or in a fiduciary capacity." (Italics added.)

On December 29, 1981, Blumberg tendered his defense of the Zommick breach of partnership lawsuit to Guarantee, purportedly under the terms of the malpractice policy. Guarantee, without explanation, refused to defend and indemnify Blumberg.

On December 26, 1985, over three years after Guarantee refused Blumberg's tender of defense, Blumberg initiated this action.

The first amended complaint, which is the subject of this appeal, contains five causes of action, all of which are predicated upon Guarantee's refusal to assume Blumberg's defense of the Zommick breach of partnership lawsuit.

Guarantee's demurrer to Blumberg's first amended complaint was made on the grounds that it failed to state any causes of action, inasmuch as (1) Guarantee was not, as a matter of law, contractually obligated to assume his defense to the Zommick breach of partnership lawsuit and (2) the causes of action were barred by the applicable statutes of limitation. Blumberg opposed the demurrer, but did not offer to file a second amended complaint.

At the conclusion of the June 23, 1986, hearing, Guarantee's demurrer was sustained without leave to amend on the ground that, while the "fiduciary coverage" provision may provide coverage, exclusion (h) excludes claims arising out of the conduct of a business in which a lawyer is a partner. A judgment of dismissal (Code Civ. Proc., § 581, subd. (c)) was entered on June 23, 1986. Blumberg timely appealed.

CONTENTIONS[1]

I. The Guarantee policy provides coverage for the claims made by Zommick.

II. Exclusion (h) is void because it is irreconcilable with the purpose of the policy.

---

[1] In reply to Guarantee's arguments, Blumberg also asserts that (a) the type of damages sought in the Zommick complaint does not excuse Guarantee from its duty to defend and (b) Blumberg's causes of action are not barred by the applicable statutes of limitations.

## DISCUSSION

■ Inasmuch as this appeal was taken from the judgment of dismissal after the trial court sustained Guarantee's general demurrer without leave to amend, the question to be determined is whether Blumberg's first amended complaint states a cause of action. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 611 [116 Cal.Rptr. 919].) In order to answer this question, we must make our own independent determination of the meaning of the language used in the Guarantee policy because the facts here are not in dispute and the trial court made its determination as a matter of law. (*Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 413 [191 Cal.Rptr. 37, 39 A.L.R.4th 189].)

■ The insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks which are covered by the policy. (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].) If there is no potential for coverage, Guarantee has no duty to defend. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168]; *Hartford Fire Ins. Co.* v. *Superior Court, supra,* 142 Cal.App.3d at p. 413.)

The courts must evaluate not only the provisions of the policy but construe them to give the insured the protection he reasonably had a right to expect. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 270, fn. 7; *Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 572 [218 Cal.Rptr. 407].) The best evidence of the intent of the parties to an insurance policy is the policy itself. (*City of Mill Valley* v. *Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 599 [159 Cal.Rptr. 635].)

*Basic Coverage Provision.*

In the basic coverage clause of its "Lawyers Professional Liability Insurance Coverage" policy, Guarantee agrees to pay claims arising out of the insured's activities in rendering "professional services for others" in his "capacity as a lawyer."

The Zommick complaint alleges that Blumberg breached his partnership and fiduciary duties by making intentional and/or negligent misrepresentations regarding the Chamonix cases at the time the memorandum of agreement was executed, dissolving the partnership and making provision for the method by which the partnership assets were to be distributed.

■ We conclude that at the time Blumberg made the alleged misrepresentations, he was not rendering professional services "for others" nor act-

ing in his "capacity as a lawyer." Rather, Blumberg was acting in his capacity as Zommick's law partner and the fact that he happened to be a lawyer was of no import whatever. Therefore, the basic insuring clause of the Guarantee policy provides no coverage to Blumberg for the acts alleged in the Zommick complaint.

### The Fiduciary Coverage Provision.

The fiduciary coverage provision likewise does not provide coverage for Blumberg's alleged misrepresentations and breach of the fiduciary duty he owed Zommick. Under that provision, the insured is covered only for his "acts as an administrator, conservator, executor, guardian, trustee or in any other *similar* fiduciary capacity" and the insured's acts and omissions are deemed, for the purpose of the basic insuring provision, "the performance of professional services for others in the insured's capacity as a lawyer." (Italics added.)

The language of the foregoing clause does not describe fiduciary duties in general. Rather, it describes court-appointed positions which lawyers accept typically in conjunction with, or as a part of, their *lawyering* duties.

Blumberg argues, however, that he is entitled to coverage because he was acting as a fiduciary when the acts alleged in the Zommick complaint occurred. He cites for that proposition *Rosenfeld, Meyer & Susman* v. *Cohen* (1983) 146 Cal.App.3d 200 [194 Cal.Rptr. 180], in which the Court of Appeal quoted from a recent California Supreme Court case (*Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal.Rptr. 377, 658 P.2d 740]) as follows: " 'In *Page* v. *Page* (1961) 55 Cal.2d 192, 197 [10 Cal.Rptr. 643, 359 P.2d 41], we observed: "We have often stated that 'Partners are *trustees* for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.' [Citations.]" ' " (146 Cal.App.3d at p. 214, italics added.)

While Blumberg may have been an implied-in-law trustee for Zommick under *Rosenfeld,* that is not the type of relationship reasonably contemplated by the fiduciary coverage provision of the Guarantee policy. We refuse to so construe that clause because it cannot be said that a law partner acting in his capacity as a *partner* is performing a "professional service for others in [his] capacity as a lawyer." (Italics added.)

Carried to its obvious conclusion, Blumberg could potentially claim coverage under the Guarantee malpractice policy for a lawsuit brought by his

wife alleging a breach of the fiduciary duties one spouse owes the other in transactions between themselves (see Civ. Code, § 5103, subd. (b)), and cite in support of his argument *In re Marriage of Koppelman* (1984) 159 Cal.App.3d 627 [205 Cal.Rptr. 629], in which the Court of Appeal stated: "The spouse who controls community property assets occupies a position of trust which is not terminated as to assets remaining in his or her hands after separation. 'It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement.' [Citations.] When a *trustee* spouse has commingled separate and community funds and assets so that it is impossible to ascertain and identify each source, the commingled whole will be presumed to be community property. [Citations.]" (*Id.,* at pp. 634-635, italics added.)

■ While it is true, as Blumberg argues, that any uncertainty or ambiguity in an insurance contract is resolved against the insurer (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc., supra,* 172 Cal.App.3d at p. 577) and that general coverage clauses are interpreted broadly to afford the greatest possible protection to the insured (*ibid.*), a coverage clause cannot be analyzed in a vacuum. " 'An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other.' [Citations.]" (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 916-917 [226 Cal.Rptr. 558, 718 P.2d 920].) ■ When the fiduciary coverage clause is interpreted in conjunction with the policy's basic coverage provision (Insuring Agreement I), to which it refers, its meaning is perspicuous. The fiduciary coverage clause provides the insured attorney with coverage when he acts in a dual capacity as both a lawyer and as a fiduciary for his client in circumstances where the basic coverage clause does not clearly apply.

The example given by Guarantee serves to make this point clear. "When an attorney renders professional legal services as an estate planner, he is undoubtedly rendering legal services for a client—an act clearly covered under the terms of the policy's basic Insuring Agreement. Upon the death of the client, the attorney may act in a dual capacity: (1) as the administrator of the deceased client's estate; and (2) as the attorney for the administrator of the deceased client's estate."

The attorney in this example is, in reality, rendering legal services to himself as the administrator of the estate. Thus, he would not be entitled to the coverage supplied by Guarantee's basic coverage provision, since it requires an attorney to render the "services for others." However, the fiduciary coverage clause prevents this forfeiture from occurring: under its provisions, the attorney will be deemed to be performing professional services "for others in [his] capacity as a lawyer."

Such an interpretation of the fiduciary clause is reasonable. It acts to enhance the coverage offered by the policy in a manner consistent with the type of liability insurance the policy title advises the insured he has purchased, namely, "Lawyers Professional Liability Insurance Coverage."

### Exclusion (h).

The clear language of exclusion (h) precludes coverage under the Guarantee malpractice policy for the acts of Blumberg alleged in the Zommick complaint. Exclusion (h) states that the policy does not provide coverage for: "any claim arising out of or in connection with the conduct of *any business enterprise* ... in which any Insured is a *partner,* or which is directly or indirectly controlled, operated or managed by any Insured either individually or in a fiduciary capacity."

Like any other limitation to coverage, exclusionary clauses are interpreted narrowly against the insurer. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc., supra,* 172 Cal.App.3d at p. 577; *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 751 [161 Cal.Rptr. 322].) Even narrowly construed, however, exclusion (h) operates as an absolute bar to coverage for the Zommick breach of partnership lawsuit, since the claims embraced therein arose "out of" and "in connection with the conduct of [a] business enterprise" in which Blumberg was a partner, the former law firm of Blumberg and Zommick.

Blumberg argues, however, that exclusion (h) does not apply because the Zommick complaint alleges the wrongful conduct to have taken place, not during the *conduct* of the partnership, but instead during its dissolution and liquidation. In support of his argument, Blumberg notes The Uniform Partnership Act recognizes three distinct phases of a partnership: (1) its formation, (2) its conduct and (3) its liquidation. (See, e.g., Corp. Code, § 15021.)

While that may be so, Blumberg's argument ignores the fact that correcting and keeping accurate records of the fees generated by lawyer partners is central to the conduct of a law firm. Certainly Blumberg could not prevail on his "liquidation or dissolution" argument if Zommick's claim pertained to alleged misrepresentations he made about accounts receivables during the process of liquidating a haberdashery business in which he and Zommick were partners. The argument is no more valid in the context of the dissolution of their law partnership business.

Blumberg offers a second argument to negate the effect of exclusion (h). According to Blumberg, the exclusion is so broad that it precludes coverage for virtually any claim made under the policy. For that reason, Blumberg

argues, exclusion (h) is both "repugnant" to the coverage clauses (*Hobson* v. *Mutual Benefit, H. & A. Ass'n.* (1950) 99 Cal.App.2d 330, 333-334 [221 P.2d 761]; *Tavares* v. *Glens Falls Ins. Co.* (1956) 143 Cal.App.2d 755, 761 [300 P.2d 102]) and is "ambiguous" (*CNA Casualty of California* v. *Seaboard Surety* Co. (1986) 176 Cal.App.3d 598, 614 [222 Cal.Rptr. 276]).

The thrust of Blumberg's argument is that since the practice of law is "a business enterprise," as that term is used in the Guarantee policy, exclusion (h) excludes the principals of a law firm from *all* of the coverage provided by the policy's coverage clauses. Blumberg gives as a hypothetical a law partner named as a defendant in a legal malpractice lawsuit and argues such partner would be covered under the policy's basic coverage provision, but would be excluded from coverage by exclusion (h).

Blumberg's resort to hypothetical hyperbole to conjure up ambiguity in the Guarantee malpractice policy must fail. (*Nabisco, Inc.* v. *Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 835 [192 Cal.Rptr. 207].) ▮ "Ambiguity in an insurance policy, if it exists, must be found in the circumstances of the particular case; it may not be created in the abstract." (*Ibid.*) Our Supreme Court recently reiterated this principle in *Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* 41 Cal.3d 903, stating: "[L]anguage in [an insurance] contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (*Id.,* at p. 916, fn. 7.)[2] ▮ Construed in the context of the facts of this case, exclusion (h) is not "repugnant" to the coverage clauses, nor is it ambiguous.

▮ Guarantee has a right to limit the coverage of its policy and when it has done so the plain language of the limitation must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 850 [140 Cal.Rptr. 493].) Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated. (*Aas* v. *Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 320 [127 Cal.Rptr. 192]; *State Farm Mut. Auto Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 547 [95 Cal.Rptr. 296].)

---

[2] The learned trial court recognized that Blumberg's "repugnancy" and "ambiguity" argument was made in the abstract in its comments during the hearing on Guarantee's demurrer: "[I]f the underlying case here had been a run-of-the-mill malpractice case, that is, a client accusing a lawyer of doing or not having done something so that there was negligence in the practice of law, in other words, your argument then about that exclusion (h) would have a great deal of force. But I don't think you can turn the underlying facts here to your advantage, given what those underlying facts are, a dispute between Mr. Blumberg and his former law partner."

Thus, Blumberg has failed to show that the Zommick breach of partnership lawsuit has given rise to a "potential of liability" under the terms of the legal malpractice policy which would contractually obligate Guarantee to provide the requested defense. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 275; *Hartford Fire Ins. Co.* v. *Superior Court, supra,* 142 Cal.App.3d at p. 413.)

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied July 24, 1987, and appellants' petition for review by the Supreme Court was denied September 16, 1987. Lucas, C. J., did not participate therein.