[No. 1975–3. Division Three. July 21, 1977.]

GOVERNMENT EMPLOYEES INSURANCE CO., *Respondent,* v. DENNIS R. TITUS, *Appellant,* BRADLEY A. BOWMAN, ET AL, *Respondents.*

*Robert A. Southwell, Richard C. Eymann,* and *Malott & Southwell, P.S.,* for appellant.

*Curtis Shoemaker, Paine, Lowe, Coffin, Herman & O'Kelly,* and *John Jarrett* of *Spokane County Legal Services,* for respondents.

GREEN, J.—Government Employees Insurance Co. (GEICO) brought a declaratory judgment action against G. Jean Bowman, their insured, her son, Bradley A. Bowman, and Dennis R. Titus to determine coverage under an insurance policy issued to Mrs. Bowman. The question of coverage arises from an accident between her son and Mr. Titus. The trial court determined that the policy did not cover this accident. Mr. Titus appeals.

He contends the trial court should have found coverage under the policy because: (1) certain provisions of the policy are ambiguous requiring a construction in favor of the insured; (2) the Bowmans gave timely notice to GEICO of the acquisition of the automobile driven by Bradley Bowman; and (3) Bradley Bowman was a named insured under the policy. We affirm.

On August 12, 1973, Mrs. Bowman renewed a liability policy with GEICO which covered her as the named insured and any resident of the household with respect to an owned automobile, a 1967 Pontiac. Mrs. Bowman testified that after the renewal she requested GEICO to add her son to the policy as an insured person. She was billed for a premium increase that she understood to be "for putting Brad on as a named insured which is what I requested." After receiving the statement for increased premiums, she wrote GEICO asking that they send an endorsement stating that

her son was covered. GEICO sent the following memorandum in September 1973: "Your son is covered to drive your auto." The division manager for GEICO testified that under the policy, the son would have been covered to drive the named insured's automobile, the 1967 Pontiac, even without the request and receipt of increased premiums. However, he explained that when GEICO receives notice that a youthful driver is driving the insured's automobile, the premium is increased and the policy lists the youthful driver as an "additional operator", not a "named insured."

On September 26, 1973, Mrs. Bowman purchased a 1960 Chevrolet, receiving delivery, bill of sale and title on that date. Although the automobile did not have a reverse gear, it was driven approximately 10 miles from the place of purchase to the Bowman residence. The next day it was driven a few feet forward to facilitate repair in the Bowman yard. There, it remained parked until Bradley Bowman replaced the transmission at a cost of $25. The Chevrolet was not driven on public streets until approximately January 15, 1974. On January 26, Bradley Bowman, while driving the Chevrolet, collided with Mr. Titus. Mrs. Bowman notified GEICO on January 28 of her purchase of the 1960 Chevrolet and her son's accident.

First, it is contended that the policy definitions of "owned"[1] and "non–owned"[2] automobiles are ambiguous. Mr. Titus argues that the 1960 Chevrolet is a "non–owned" automobile under the policy since it was not operable

---

[1] "[O]wned Automobile" means

"...

"(c) a private passenger, . . . automobile ownership of which is acquired by the named insured during the policy period, provided

"...

"(2) the company insures all private passenger . . . automobiles owned by the named insured on the date of such acquisition *and the named insured notified the company within 30 days* after the date of such acquisition . . ." (Italics ours.)

[2] "*'Non–owned Automobile'" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative . . .*" (Italics ours.)

because there was no reverse gear in the transmission and, hence, "not . . . furnished for the regular use of the named insured or any relative." Consequently, he contends the Chevrolet was "not furnished for regular use" and was not an "owned" automobile until the date of its repair; hence, there was no obligation to give notice of acquisition to GEICO until the transmission was repaired on January 15 or within 30 days thereafter. Therefore, he argues Mrs. Bowman gave timely notice of her acquisition of the Chevrolet. In essence, it is asserted that because these two provisions are susceptible of more than one interpretation, the one most favorable to the insured must be adopted.

 It is well established that clear and unambiguous language in an insurance policy must be given its ordinary meaning, and the court cannot read into a policy an ambiguity under the guise of interpreting it. However, when language in a policy is reasonably susceptible of different interpretations, that interpretation most favorable to the insured must be adopted. *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 548 P.2d 302 (1976); *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 545 P.2d 1193 (1976).

Here, we agree with the trial court that these policy definitions are clear and unambiguous. Under the policy, the Chevrolet was clearly an "owned" automobile because it was "acquired by the named insured during the policy period" and would be covered by the policy if "the named insured notified the company within 30 days after the date of such acquisition." Mrs. Bowman purchased and owned the 1960 Chevrolet on September 26, 1973, and GEICO was not notified until January 28, 1974. Consequently, the Chevrolet is not a covered automobile under the policy.

The attempt by Mr. Titus to create a "non–owned" automobile out of an "owned" automobile in order to escape the 30–day–notice requirement is an unreasonable interpretation of the "non–owned automobile" provision. We find no ambiguities in these provisions.

Second, Mr. Titus contends that even if the policy is unambiguous, since the Chevrolet was inoperable on the date of purchase, an owned "automobile" had not been acquired under the policy on that date. He argues that the Chevrolet did not become an automobile under the policy until it became operable on January 15, 1974. Thus, he contends that the requirement of notice 30 days after acquisition should commence on January 15 and Mrs. Bowman's notice on January 28 is timely. We disagree.

 Mr. Titus relies upon *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976); *Trippel v. Dairyland Mut. Ins. Co.,* 2 Wn. App. 318, 467 P.2d 862 (1970), to the effect that an inoperable automobile may not in proper circumstances be defined as an automobile for liability insurance policy purposes, recognizing a line of authority existing in other jurisdictions. These cases are not dispositive here. As the trial court noted, Bradley Bowman drove the Chevrolet approximately 10 miles from the place of purchase to Mrs. Bowman's home. Based on this circumstance, it found the Chevrolet to be operable despite the fact that it did not have a reverse gear. This conclusion we believe is inevitable. Suppose Bradley Bowman had collided with Mr. Titus on that trip and GEICO brought a declaratory judgment action seeking to be relieved from liability on the ground that the vehicle was inoperable. It is inescapable that an automobile being driven upon a public highway in those circumstances must be found to be an operable automobile. Therefore, since it was an operable automobile on September 26, 1973, notice to GEICO on January 28 does not meet the notice requirements of the policy. We find no error.

 Finally, it is contended the court erred in refusing to find that Bradley Bowman was a named insured under the policy. While the evidence is unclear whether Mrs. Bowman requested coverage for her son as a "named insured", the memorandum from GEICO to Mrs. Bowman is clear: "Your son is covered to drive your auto." Since the 1967 Pontiac was the only "auto" Mrs. Bowman owned, she was clearly notified of the extent of her son's coverage. The trial court's

finding that the only "named insured" under the policy was Mrs. Bowman is supported by substantial evidence and will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

Affirmed.

MUNSON, C.J., and McINTURFF, J., concur.