Peter Amelius JARVIS, Appellant,

v.

The AETNA CASUALTY AND SURETY
COMPANY, a corporation, Appellee.

No. 5576.

Supreme Court of Alaska.

Sept. 25, 1981.

William H. Babcock, Sitka, for appellant.

Nicholas C. Newman, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Appellant, Peter A. Jarvis [Jarvis], was injured in an automobile accident in Ketchikan on March 12, 1975, while riding as a passenger in an automobile driven by Stephen Console [Stephen]. The automobile [loaner car] had been loaned to Stephen by Brand Volkswagen while his car was in the shop for repairs. Stephen was named in a policy issued to his father, Frank Console [Frank], a resident of the City of Santa Barbara, California, by Aetna Casualty and Surety Company [Aetna].[1]

> 1. NAMED INSURED AND ADDRESS
> FRANK M CONSOLE
> 1037 ESTRELLA DR
> SANTA BARBARA
> CA 93110
> . . .
> 4. DESCRIPTION OF OWNED AUTOMOBILE

| No. Year, Trade Name, Body Type, Model, Identification Number, Symbol | Rating Class |
|---|---|
| 1 73 PONTIA 2DR–HT GRAND 2H37R3TZ16899 5 | 856110 |

Jarvis brought suit in superior court against Stephen for negligent operation of the automobile. The defense of the claims was tendered to Aetna, which denied that coverage extended to Stephen for this accident. Aetna sought declaratory relief prior to trial of the negligence claims and moved for summary judgment on whether insurance coverage and a defense was provided to Stephen under his father's policy. Jarvis opposed Aetna's summary judgment motion and sought partial summary judgment that Stephen was a "named insured" and the loaner car was a "non-owned automobile" under the Aetna policy.[2] In the alternative, Jarvis argued, any questions relating to coverage involve factual questions about (1) Stephen's and Frank's reasonable belief that coverage extended to Stephen as a named insured, (2) the issue of whether the automobile was a "non-owned automobile" under the terms of the policy, and (3) the issue of whether the automobile was furnished to Stephen for his regular use.

The trial court concluded the Aetna policy clearly excluded coverage of Stephen under the circumstances of the case. The court entered final judgment declaring Aetna had no duty to defend Stephen or to pay any judgment or settlement on his behalf in the negligence actions. We affirm.

## THE AETNA POLICY

The declarations page of the policy contained the following information:

---

1. The owner of the loaner car was insured by United States Fidelity and Guaranty Company. The liability of this insurer remains to be litigated. There was no automobile liability insurance specifically covering or describing the car owned by Stephen that was in the shop for repairs.

2. United States Fidelity and Guaranty Company and Olaf R. Entwit, also injured in the accident, opposed Aetna's motion for summary judgment and sought partial or full summary judgment on Aetna's liability.

. . .

| 6. INSURED INFORMATION | | | PERCENTAGE OF USE | |
|---|---|---|---|---|
| No. | Name | Date of Birth | Car 1 | Car 2 |
| 1 | # FRANK M. CONSOLE | 03–04–24 | 5 | |
| 2 | # MARGARET F. CONSOLE | 06–22–26 | 90 | |
| 3 | # STEVE CONSOLE | 09–17–56 | 5 | |

The following information is provided under the policy:

Persons Insured

Under the Liability and Medical Expense Coverages, the following are Insured:

(a) with respect to an owned automobile,

(1) the named Insured,

(2) any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a) (1) or (2) above;

(b) with respect to a *non-owned automobile,*

(1) *the named Insured,*

(2) *a relative,* but only with respect to a private passenger automobile or utility trailer,

provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an Insured under (b) (1) or (2) above. [Emphasis added.]

These provisions are followed by a list of twenty-two definitions, among them:

"Insured" means a person or organization described under "Persons Insured";

"named Insured" means *the individual or husband and wife named in item I* of the declarations, but if only one individual is named the term "named Insured" also includes his spouse, if a resident of the same household;

"non-owned automobile" means an automobile not owned by or furnished or available for the regular use of either the named Insured or any resident of the same household, and includes, while used therewith, a home trailer not owned by the named Insured or a utility trailer, but "non-owned automobile" *does not include a temporary substitute automobile;*

. . . . .

"owned automobile" means

(a) *a private passenger* or utility *automobile* or home trailer *described in this policy* for which a specific premium charge indicates that coverage is afforded,

(b) *a private passenger* or utility *automobile* or home trailer *ownership of which is acquired by the named Insured* during the policy period, *provided*

(1) *it replaces an owned automobile* as defined in (a) above, or

(2) *Aetna Casualty insures all* private passenger and utility *automobiles owned by the named Insured* on the date of such acquisition *and the named Insured notifies Aetna Casualty within 30 days* thereafter of his election to make this and no other policy issued by Aetna Casualty applicable to such automobile and trailer,

(c) a temporary substitute automobile,

and includes, while used with any automobile described above, a home trailer not owned by the named Insured or a utility trailer;

. . . . .

*"relative"* means a person related to the named Insured by blood, marriage or adoption who is a resident of the same household, *providing neither such relative nor his spouse owns a private passenger automobile;*

*"temporary substitute automobile"* means an automobile not owned by the named Insured or any resident of the same household, while temporarily used with the permission of the owner *as a substitute for an owned automobile* when withdrawn from normal use for servicing or repair or because of its breakdown, loss or destruction. . . . [Emphasis added throughout.]

If Jarvis's arguments were accepted, Stephen would be extended coverage under subsection (b)(1) of the policy provision that describes the persons insured under the liability and medical expense coverages. This subsection provides coverage to a "named insured" with respect to a "non-owned" automobile.[3]

## THE NAMED INSURED ISSUE

Jarvis argues that because three names are listed on the declarations page of the policy "just below item 1," later references to the "named insured" are ambiguous. He argues two reasonable interpretations of "named insured" are possible, the person named in item 1 and the persons named in item 6 on the declarations page. Because

3. (3) The superior court concluded that, under the above provisions,

it is clear that Stephen is not a named insured, but he is a person insured under the policy with respect to owned automobile. He is not a person insured under the policy with respect to non-owned automobile, because while he is related by blood to the named insured and probably resided in the same household, he clearly owned an auto of his own. Thus, it is not necessary to resolve the question as to whether Stephen was still a resident of his father's household for purposes of this policy, because his ownership of the Volkswagen clearly excluded him as a relative under the policy.

The vehicle that Stephen was driving was not a temporary substitute automobile because it did not replace an owned automobile as that term is defined in the policy.

. . . . .

insurance contracts are adhesion contracts, he argues, we must resolve the ambiguity in favor of the insured and against the insurer.

At his deposition, Frank testified he believed Stephen was covered "just like any of the rest of us under the terms of the policy." He said he did not read the fine print of the policy but he discussed the coverage with the agent. He was aware the policy covered the use of non-owned automobile and it was his understanding Stephen was covered by the policy when driving someone else's automobile. The claims manager of the agency that sold Frank the policy also testified, while looking at the declarations page of Frank's policy, that it was her understanding the terms of the policy "would pertain equally to all three of the insureds under the policy."

If a lay person looks only at the declarations page of the policy and reads the coverage provisions, he or she might assume the three persons named in Item 6 on the declarations page are "named insureds". However, if he or she reads through the lists of definitions, and refers back to the declarations page and again to the coverage provisions, it is evident that the person named in item 1 and his or her spouse are extended coverage different from that extended other insureds under the policy.[4] There is no mention in the policy of the significance of the information contained in item 6.

The automobile operated by Stephen at the time of the accident giving rise to this litigation was replacing one obviously owned by and registered to Stephen. It cannot be considered a non-owned automobile under the policy.

4. In a recent opinion, a California appellate court recognized that the lay reader seeing the words "insured" and "named insured" used repeatedly throughout a policy would not be struck by the fact that there was a distinction between the two in terms of coverage. The policy format reviewed in the California case is clearly distinguishable from the Aetna form before us. The case is applicable to the instant case in that the California court noted the absence of "[t]he definition frequently used, that 'named insured' means the person or persons whose names appear in Declaration 1." *National Indem. Co. v. Demanes,* 86 Cal.App.3d 155, 150 Cal.Rptr. 117, 120 (Cal.App. 1978).

It is firmly settled that insurance contracts are contracts of adhesion. In view of the disparate bargaining status of the parties we attempt to ascertain the meaning of the contract which a lay person would reasonably expect from a lay interpretation of the policy language. Any ambiguity and uncertainty in an insurance policy is resolved against the insurer. *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 65–66 (Alaska 1977); *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 107–108, 419 P.2d 168, 171–72 (1966).[5]

As we recently noted, "This rule is not applied whenever two parties to a contract simply disagree over the interpretation of any of its terms. Rather, ambiguity is found to exist 'only when the contract, taken as a whole, is reasonably subject to differing interpretations.'" *United States Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979) (quoting *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976)). *Accord, California State Automobile Association Inter-Insurance Bureau v. Warwick*, 17 Cal.3d 190, 130 Cal. Rptr. 520, 523, 550 P.2d 1056, 1059 (1976); *Aas v. Avemco Insurance Co.*, 55 Cal.App.3d 312, 127 Cal.Rptr. 192, 197 (1976). The terms of an insurance contract "are to be understood in their ordinary and popular sense and as a man of average intelligence and experience would understand them." *Burr v. Western States Life Insurance Co.*, 211 Cal. 568, 296 P. 273, 276 (1931). *Accord, INA Life Insurance Co. v. Brundin*, 533 P.2d 236, 239–42 (Alaska 1975).

Though the distinction between a named insured and an insured may be well-known to those in the insurance business, the lay person would not necessarily recognize the distinction if it were not spelled out in a definition section. Nonetheless, the disputed provision and definition section of the Aetna policy are plain and explicit. As the California Supreme Court noted, "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Continental Casualty Co. v. Phoenix Construction Co.*, 46 Cal.2d 423, 296 P.2d 801, 806 (1956). Further,

"[A] court cannot and should not do violence to the plain terms of a[n] [insurance] contract by artificially creating ambiguity where none exists. In situations in which reasonable interpretation favors the insurer and any other would be strained and tenuous, no compulsion exists to torture or twist the language of the contract."

*Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guaranty, Co.*, 76 Cal.App.3d 272, 142 Cal.Rptr. 681, 686 (1977) (quoting *Matsuo Yoshida v. Liberty Mutual Insurance Co.*, 240 F.2d 824, 826–27 (9th Cir. 1957)).

This is not a case which the coverage sought is the precise coverage bargained for by the parties.[6] At the time the policy was taken out by Frank, Stephen was living at home and did not own a car. Under the terms of the Aetna policy he was *then* covered to the same extent as his mother and father as a "relative" of the

---

5. Aetna asserted at the trial court level, and both parties agree on appeal, that California law applies to the substantive issues in this case. Thus, we find no choice of law problems are presented.

6. We note that in exceptional circumstances were the insured has no notice that coverage is limited or excluded or it would be unconscionable for the insurer to deny coverage, the court will look beyond form to substance and will reform the policy to comply with the reasonable expectations of the insured. *See Steven v. Fidelity & Cas. Co.*, 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1962); *Allstate Ins. Co. v.*

*Reeves*, 66 Cal.App.3d 464, 136 Cal.Rptr. 159 (1977); *Logan v. John Hancock Mut. Life Ins. Co.*, 41 Cal.App.3d 988, 116 Cal.Rptr. 528 (1974); *Young v. Metropolitan Life Ins. Co.*, 272 Cal.App.2d 453, 77 Cal.Rptr. 382, opinion on denial of rehrg., 272 Cal.App.2d 453, 78 Cal.Rptr. 568 (1969). Other jurisdictions are in accord. *See Dixie Auto Ins. Co. v. Safeco Ins. Co.*, 292 Ala. 358, 294 So.2d 736 (1974); *Pelych v. Potomac Ins. Co.*, 91 Misc.2d 973, 401 N.Y. S.2d 374 (N.Y.Sup. 1977). We do not find the exceptional circumstances necessary to permit reformation of the language of the policy before us.

"named insured". At the time of the accident, Stephen had been living in Ketchikan more than six months and he had bought two cars that he did not attempt to place on the Aetna policy. The loaner car was a substitute for a car that would not have been covered by the Aetna policy, even if driven by the "named insured", because it was neither an "owned automobile" nor a "non-owned automobile' as those terms are defined. Clearly it would be unreasonable to expect coverage in the circumstances of this case.

We conclude, therefore, that the trial court did not error in ruling Stephen was not a named insured under the Aetna policy.[7] However, our conclusion does not indicate our approval of the format of the declarations page of the policy. We do not approve of the inclusion of "information" on the face of a policy that is nowhere explained in the accompanying thirteen pages of fine print.[8]

## THE REMAINING ISSUE

Jarvis's third argument on appeal concerns the issue of whether summary judgment is proper in this case. He argues the reasonable expectations of the parties is a question of fact.

 In *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63 (Alaska 1977), we held that, keeping in mind the special considerations applicable to insurance contracts, we shall interpret insurance contracts in accordance with our general contract principles.

To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Id.* at 66 (footnote omitted). Similarly, the California courts recognize that when there is no conflicting extrinsic evidence as to the meaning of the policy and the terms and provisions of the policy constitute the entire agreement of the parties, the interpretation of insurance policies is a judicial function. *Stearns v. Title Insurance & Trust Co.*, 18 Cal.App.3d 162, 95 Cal.Rptr. 682, 684 (1971). *See Aas v. Avemco Insurance Co.*, 127 Cal. Rptr. at 196–98. We find no extrinsic evidence which convinces us that at the time of contracting Frank reasonably would expect coverage would extend to Stephen in the circumstances of this case.

**AFFIRMED.**

---

7. To prevail on appeal, Jarvis must show that Stephen was a "named insured" *and* that the loaner car was a "non-owned automobile." Because we affirm the trial court's decision that Stephen was not a named insured we do not reach Jarvis' argument that the loaner car was a "non-owned automobile" under the Aetna policy. Jarvis does not contest the trial court's conclusion that Stephen was not covered under section (b)(2) as a "relative" *because it was* undisputed that Stephen owned an automobile that he did not place on the Aetna policy. *See* note 3 *supra.*

8. In our review of the authorities we found no decisions addressing the particular format of the declarations page in this policy. The usual case is that the person seeking coverage is named in an endorsement attached to the poli-

cy. *See Unigard Ins. Co. v. Studer*, 536 F.2d 1337, 1338 (10th Cir. 1976); *Home Indemnity Co. v. Wilson*, 107 Ariz. 434, 489 P.2d 244, 245 (1971); *Government Emp. Ins. Co. v. Titus*, 18 Wash.App. 208, 566 P.2d 990, 991 (1977). *See generally* Annot., 91 A.L.R.3d 1280 (1979) ("Who is 'named insured' within meaning of automobile insurance coverage"). When the parties "clearly" intended that named insured coverage extend to someone other than the person named in item 1, courts have found coverage extended to the other person as a named insured. *Unigard Ins. Co. v. Studer*, 536 F.2d 1337 (10th Cir. 1976); *United States Fidelity & Guar. Co. v. Winkler*, 351 F.2d 685, 687–89 (8th Cir. 1965), *cert. denied*, 382 U.S. 1026, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966).