Frank M. BARBER, and Mario T. Barber, by and through his guardian ad litem, Ray Harding Ivie, Plaintiffs and Appellants,

v.

FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

No. 860319–CA.

Court of Appeals of Utah.

Feb. 26, 1988.

Sherman C. Young, Ray Phillips Ivie, Ivie and Young, Provo, for plaintiffs and appellants.

Aaron Alma Nelson, Bayle, Hanson, Nelson & Chipman, Salt Lake City, for defendant and respondent.

Before ORME, BENCH and DAVIDSON, JJ.

## OPINION

ORME, Judge:

Plaintiffs Frank Barber and his son, Mario, brought an action against defendant Farmers Insurance Exchange after it refused to provide coverage in connection with an accident involving Mario. The case came before the trial court on cross-motions for summary judgment. The court granted Farmers' motion for summary judgment and denied the Barbers' motion. The Barbers appeal from that disposition. We affirm.

## FACTS

On March 21, 1983, Mario Barber, a minor, drove an uninsured motorcycle owned by a classmate into a car owned by Robert Bernards. At the time of the accident, Bernards was insured by Farmers, which paid him $608.34, less a deductible, for the damage to his car. This coverage was pursuant to the "uninsured motorist" provisions of that policy. Farmers then brought suit against Mario Barber under the subrogation provisions of Bernards' policy, to collect the amount it paid out for the damage to Bernards' car.

At the time of the accident, Mario's father, Frank Barber, had his 1974 Honda automobile insured under a policy also issued, coincidentally, by Farmers. Accord-

ingly, as a defense to the subrogation lawsuit, the Barbers claimed that Mario was entitled to coverage for the accident under Frank's policy and demanded that Farmers furnish Mario a defense to the lawsuit and indemnity for any judgment entered against him. Farmers denied responsibility, claiming that Frank's policy specifically excluded coverage for use of a non-owned motorcycle. After an extensive exchange of correspondence, Farmers eventually dismissed its suit, without prejudice, as not worth the effort of prosecuting in view of the resistance which was offered.

The Barbers subsequently filed this action against Farmers, claiming that Farmers had breached its contract of insurance by refusing to defend or indemnify Mario and raising an array of related claims, including intentional infliction of emotional distress, violations of insurance department regulations and statutes, breach of fiduciary duty, intentional interference with a property interest, and willful and malicious conduct. Following some discovery, cross-motions for summary judgment were filed.

The Barbers argued that while their Farmers policy defined "motor vehicle" to exclude motorcycles from non-owned vehicle coverage, all insurance policies issued in Utah must comply with the Motor Vehicle Safety Responsibility Act (the "SRA"), then in effect, which defined "motor vehicle" to include motorcycles. Farmers, on the other hand, while conceding the policy's motorcycle exclusion might be ineffective under the SRA as applied to the named insured, argued that the SRA did not require the same coverage for Mario, a "relative" of the named insured.

The trial court took a somewhat different tack, concluding that, to the extent the SRA and the No–Fault Insurance Act are inconsistent in their definitions of "motor vehicle," the No–Fault act governs. Since the term "motor vehicle" under the No–Fault act excludes motorcycles, it was permissible for the policy to do likewise. Therefore, Mario was not covered by the policy and Farmers could not be held responsible for damages caused by Mario's use of the motorcycle. Consequently, the court granted Farmers' motion for summary judgment and dismissed the Barbers' complaint.

Before turning to an evaluation of the correctness of the court's ruling, we pause to review the somewhat convoluted statutory scheme in effect when the accident occurred as well as some ostensibly applicable cases.

### STATUTORY BACKGROUND

At the time of the accident, the SRA provided that an automobile driver who did not carry public liability insurance and who was in an accident that caused bodily injury, death, or property damage in excess of $400 had to post security in an amount specified by the Department of Public Safety. Utah Code Ann. § 41–12–5(a) (1981) (repealed 1985 Utah Laws, ch. 242, § 58, effective July 1, 1986). The effect of the SRA was to induce most car owners to acquire public liability insurance. *See Malan v. Lewis*, 693 P.2d 661, 665 (Utah 1984).

The No–Fault Insurance Act, Utah Code Ann. §§ 31–41–1 to 31–41–13.4 (1985), enacted later, 1973 Utah Laws, ch. 55, adopted an entirely different approach. *See Malan v. Lewis*, 693 P.2d at 666. It provided a limited remedy for all persons injured in an automobile accident by requiring every automobile owner to purchase a no-fault insurance policy as a condition of registering his or her automobile. *Id.* However, sections 31–41–4 and 31–41–5 of the No–Fault act additionally required every automobile owner either to purchase public liability insurance that qualified under the SRA or to provide alternative security. The combined effect of the No–Fault act and the SRA was to require all owners of Utah-registered automobiles, other than those few able and inclined to post security, to carry liability insurance as consistent with the SRA. *See Malan v. Lewis*, 693 P.2d at 666; *Allstate Ins. Co. v. United States Fidelity & Guar. Co.*, 619 P.2d 329, 331–33 (Utah 1980).

The term "motor vehicle" was defined under the SRA as follows:

"Motor vehicle" means every self-propelled vehicle which is designed for use

upon a highway, including trailers and semitrailers designed for use with such vehicles (except traction engines, road rollers, farm tractors, tractor cranes, power shovels, and well-drillers) and every vehicle which is propelled by electric power obtained from overhead wires but not operated upon rails.

Utah Code Ann. § 41–12–1(e) (1981).

Under the No–Fault act, "motor vehicle" meant "any vehicle of a kind required to be registered under Title 41, but excluding, however motorcycles." Utah Code Ann. § 31–41–33(1) (1985).

While the SRA and the No–Fault act were both repealed by the Legislature incident to recodification of the state's insurance laws, 1985 Utah Laws, ch. 242, § 58, effective July 1, 1986, their concepts have been carried forward. "References to the former 'Safety Responsibility Act' under former Chapter 12, Title 41, are considered to refer to the corresponding provisions" of the "Financial Responsibility of Motor Vehicle Owners and Operators Act," now in Chapter 12a of Title 41. Utah Code Ann. § 41–12a–102 (1987). Comparable provisions of the No–Fault Insurance Act, formerly under Title 31, are now codified in Utah Code Ann. § 31A–22–301 to 31A–22–310 (1986). However, the new insurance code has adopted the same definition of motor vehicle as the former SRA, which does *not* exclude motorcycles, for purposes of motor vehicle insurance. Utah Code Ann. § 31A–22–301(1) (1987) (incorporating by reference Utah Code Ann. § 41–12a–103(4) (1987); compare Utah Code Ann. § 41–12–1(e) (1981)).

## PRIOR CASE LAW

There has been a flurry of cases involving the peculiarities of motorcycle insurance coverage. We find none of these cases directly applicable, however, to the instant case. In particular, we agree with the trial court that *Coates v. American Economy Ins. Co.,* 627 P.2d 92 (Utah 1981), is not dispositive of any issue raised by the parties in this case, despite the Barbers' repeated claim that it is somehow controlling.

*Coates* involved a personal injury action brought by the parents of an insured decedent who was killed when the motorcycle he was operating collided with a truck. The No–Fault Insurance Act provided insurance coverage for "personal injuries" sustained by the insured when injured in an accident in this state involving any "motor vehicle." Utah Code Ann. § 31–41–7(1)(a) (1985). The defendant insurance company argued that since the decedent was riding a motorcycle not listed in its policy and was neither driving nor occupying a "motor vehicle" as defined by the No–Fault act, he was specifically excluded from coverage. 627 P.2d at 93. The Utah Supreme Court rejected that argument, finding there was no requirement that the insured be operating or occupying the "motor vehicle"—he or she must only be in an accident involving a motor vehicle. *Id.* at 93–94. Since the decedent's motorcycle collided with a truck, there was no question that the accident involved a motor vehicle, namely the truck. *Id.* at 94. The *Coates* case dealt only with the No–Fault act's "motor vehicle" definition as it relates to insurance coverage for personal injuries, an entirely different issue from the one presented in this case, which involves a policy's motorcycle exclusion as it relates to property damage.

The most recent Utah Supreme Court case dealing with insurance coverage and motorcycles, *Hind v. Quilles*, 745 P.2d 1239 (Utah 1987) (per curiam), simply followed *Clark v. State Farm Mut. Auto. Ins. Co.*, 743 P.2d 1227 (Utah 1987), which is likewise not applicable to the issues in this case. In *Clark*, the plaintiffs' son was killed when an uninsured motorist negligently hit the motorcycle the son was operating, which was owned by the son but not insured. His parents tried to recover under an uninsured motorist clause of an insurance policy issued on their car. The uninsured motorist clause, however, did not apply if the insured was driving a vehicle owned by him, unless the vehicle was specifically described in the declarations of the policy or properly characterized as either a temporary substitute or a newly acquired

vehicle. The Clarks conceded that the motorcycle was none of the above and was therefore excluded from coverage under the policy's terms, but argued that the exclusion was nonetheless against the public policy and legislative intent behind Utah's Uninsured Motorist statute then in effect. Utah Code Ann. § 41–12–21.1 (1981).[1]

The Utah Supreme Court rejected the Clarks' argument, finding that the statute did not indicate a legislative intent to allow an individual to purchase insurance on one vehicle and thereby obtain coverage on all other vehicles in the household. *Id.* at 1229. Thus, the exclusion of the motorcycle from coverage in *Clark* was based on the fact that it was "owned" but uninsured, whereas in this case, the exclusion is based on the motorcycle being "non-owned," which involves a different analysis than that applied in *Clark.* The only similarity, then, between *Clark* and this case is the fact that Earl Clark and Mario Barber were both riding uninsured motorcycles when involved in an accident. But the decision in *Clark* had nothing to do with the fact that the vehicle involved was a motorcycle,[2] while that fact is pivotal to the decision in this case.

With this brief background, we now consider the trial court's disposition of the cross-motions for summary judgment.

### SUMMARY JUDGMENT

Under Rule 56(c) of the Utah Rules of Civil Procedure, summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R.Civ.P. 56(c). As an appellate court reviewing a summary judgment, we apply the same standard as that applied by the trial court. *Briggs v. Holcomb*, 740 P.2d 281, 283 (Utah Ct.App.1987). That is, "[w]e consider the evidence in the light most favorable to the losing party, and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law." *Briggs v. Holcomb*, 740 P.2d at 283 (quoting *Themy v. Seagull Enters., Inc.*, 595 P.2d 526, 528–29 (Utah 1979)). Since a summary judgment is granted as a matter of law rather than fact, this court is of course free to reappraise the trial court's legal conclusions. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

As stated, the trial court determined that the No–Fault act and its definition of "motor vehicle" governed the issues before the court. The court acknowledged that all insurance policies issued to comply with the No–Fault act must also comply with the SRA, but cited § 31–41–5(1)(a) as a "clear declaration" that where inconsistent, the No–Fault Insurance Act governs over the SRA.[3] Applying the No–Fault act definition of "motor vehicle" to the issues presented, the trial court found that motor-

---

1. Utah Code Ann. § 41–12–21.1 (1981) provided:
   Commencing on July 1, 1967, no automobile liability insurance policy insuring against loss resulting from liability imposed by law for bodily injury or death or property damage suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....
   This subject is now dealt with in Utah Code Ann. §§ 31A–22–302, 31A–22–305 (1986).

2. Whether young Clark would have been covered if the motorcycle he had been riding was either a loaner from an auto repair shop, or perhaps a recently received graduation present, remains unanswered by the decision.

3. Utah Code Ann. § 31–41–5(1)(a) (1985) provided:
   Security by insurance may be provided with respect to each motor vehicle by an insurance policy that qualifies under chapter 12 of Title 41 (the Safety Responsibility Act), except as modified to provide the benefits and exemptions provided for in this act, and has been approved by the department....

cycles were excluded from coverage and granted Farmers' motion for summary judgment.

◼ While the No–Fault Insurance Act might well have governed over the SRA to the extent their terms were in fact inconsistent, there is no such inconsistency in this case. The statement of purpose preceding the No–Fault act provides, in relevant part, that "[t]he intention of the legislature is to ... effectuate a more efficient, equitable method of handling the greater bulk of the *personal injury claims* that arise out of automobile accidents...." Utah Code Ann. § 31–41–2 (1985) (emphasis added). Moreover, the Legislature specifically limited the No–Fault act's application to personal injury claims by stating that "[t]his act is not designed to have any effect on property damage claims." *Id.*

Since the Barbers' action was for Farmers' breach of contract in refusing to provide insurance coverage for the damage caused to Bernard's car and not for personal injury to Mario Barber, the No–Fault act had no direct application to the issues presented to the trial court and was not dispositive of the case. Therefore, Farmers was not entitled to judgment for the reason cited by the trial court. However, Farmers was entitled to judgment as a matter of law on another ground, namely the one urged by Farmers.

## STATUTORY INTERPRETATION

Though the Farmers policy defines "motor vehicle" to exclude motorcycles, all insurance policies issued in Utah at the time of the accident to comply with the No–Fault act were also required to comply with the SRA, which defines "motor vehicle" to include motorcycles. Thus, in order for the Farmers policy to comply with the provisions of the SRA, the policy is deemed to provide insurance coverage for its insureds when driving uninsured vehicles, including motorcycles, owned by others. This is so notwithstanding the policy's purported exclusion of motorcycles.

◼ Despite this requirement, Farmers argues it was not required to provide such coverage for Mario because he was not the "named insured" under its policy but was covered only as a "relative" under the additional coverage provided by the policy. The provision of the SRA governing coverage to non-owned motor vehicles provides, in relevant part:

Such operator's policy of liability insurance shall insure the person *named as insured therein* against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

Utah Code Ann. § 41–12–21(c) (1981) (emphasis added).

Relying on another provision of the SRA, Farmers argues that Mario was not the named insured under the Farmers policy but was the subject of additional coverage for "relatives" of the named insured. That provision provides:

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy *and such excess or additional coverage shall not be subject to the provisions of this act.*

Utah Code Ann. § 41–12–21(g) (1981) (emphasis added). Farmers argues that since the coverage afforded by its policy to Mario for use of a non-owned vehicle is "additional coverage," such coverage is not subject to the provisions of the SRA.

The SRA requires an operator's insurance policy to insure "the person named as insured therein" against loss from liability arising out of the use of vehicles not owned by the insured, but it fails to provide a definition of "named as insured." *See* Utah Code Ann. § 41–12–21(c) (1981). However, the immediately preceding provision pertaining to owned vehicles requires the owner's insurance policy to "insure the person named therein and any other person" against loss from liability arising out of the ownership, maintenance, or use of

the vehicle. Utah Code Ann. § 41–12–21(b)(2) (1981).

The omission of the words "and any other person" from subsection (c) suggests a distinction between insurance coverage with respect to accidents involving "owned" vehicles and those involving "non-owned" vehicles. The SRA requires that insurance coverage on owned vehicles extend to the named insured and anyone else he or she lets drive the insured vehicle, whereas only the named insured under the policy is required to be covered when operating an uninsured vehicle "not owned" by the insured.

The Barbers have not provided us any authority that would suggest that the statute and the Farmers policy should be interpreted other than in accordance with these fairly clear terms, although they correctly argue our interpretation permits a "window" in coverage.[4] However, other courts have validated distinctions in coverage between "named insureds" and those entitled to ancillary coverage. *E.g., Jarvis v. Aetna Casualty & Sur. Co.,* 633 P.2d 1359, 1362–64 (Alaska 1981). We agree with Farmers that under the statute in effect at the time of the accident, Mario was not a "named insured" and therefore falls within the category of "additional coverage" not subject to the provisions of the SRA. Accordingly, Farmers was entitled to provide Mario, as only a "relative" of the named insured, no coverage for his use of non-owned vehicles or, as it instead chose to do, to give him a more limited form of such coverage than the SRA required with respect to named insureds.

It is important to note that the parties have analyzed this case in terms of "coverage," or the lack thereof, and the Barbers have not raised the issue of whether, notwithstanding the fact that Mario was not "covered," Farmers nonetheless had a duty to provide him a defense to the subrogation action it filed against him. We have accordingly analyzed the case as though Mario's rights to coverage and a defense were entirely co-extensive. *But see, e.g., Deseret Federal Savings & Loan Assoc. v. United States Fidelity & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986) (duty to defend is broader than duty to indemnify).

Farmers' policy, even as construed in light of the SRA, did not provide coverage to Mario in connection with his use of a motorcycle owned by another. It follows that his other causes of action, for which breach of the insurer's obligations is a predicate, must also be dismissed. *Cf. Hind v. Quilles,* 745 P.2d 1239, 1239 (Utah 1987) (per curiam) ("Inasmuch as all other issues depend on a finding of coverage under the policy, we do not address them."). The judgment below is accordingly affirmed.[5]

BENCH and DAVIDSON, JJ., concur.

---

**4.** That such a "window" was permitted to exist is shown by recent legislation designed to close all such windows. Section 31a–22–303 of the new insurance code provides that all automobile policies issued in this state shall, *inter alia:*

> [I]nsure persons related to the named insured by blood, marriage, adoption, or guardianship who are residents of the named insured's household, including those who usually make their home in the same household but temporarily live elsewhere, *to the same extent as the named insured.*

Utah Code Ann. § 31a–22–303(1)(c) (1986) (emphasis added).

**5.** Had *Frank* been driving the uninsured motorcycle, or even an uninsured electric bus, he would have been entitled to coverage despite the policy's effort to exclude motorcycles and electric busses. This is so because, as he was named as insured, the SRA's provision that liability coverage extend to him when driving uninsured vehicles, including motorcycles and electric busses, would take precedence. The same is true for Mrs. Barber, who, as the insured's spouse, was defined under the policy as a named insured. Had *Mario* borrowed an uninsured car and driven it, rather than a motorcycle, into Mr. Bernards' car, he also would have been covered. This is so because the policy, although not required by the SRA to do so, protected Mario while driving uninsured *automobiles,* as opposed to vehicles of other sorts. The silliness of the statutory regime in effect when this accident occurred shows the Legislature's wisdom in now requiring that all family members have exactly the same coverage under automobile policies written in this state. *See* Note 4, *supra.*