[No. B001336. Second Dist., Div. Five. June 4, 1984.]

MICAELA GARCIA, Plaintiff and Appellant, v.
TRANS PACIFIC LIFE INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Baker & Camusi and Philip J. Brimble for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Robert W. Fischer, Jr., and Genevieve A. McSweeney for Defendant and Respondent.

## OPINION

**FEINERMAN, P. J.**—Plaintiff, Micaela Garcia, appeals from a summary judgment awarded in favor of defendant, Trans Pacific Life Insurance Company. Plaintiff brought suit claiming defendant breached its insurance contract in that defendant refused to pay death benefits amounting to $2,500 alleged to be due plaintiff as beneficiary under an automobile accident policy after plaintiff's husband, defendant's insured, was killed in an accident. Plaintiff also sought punitive damages against defendant claiming bad faith underlay defendant's failure to pay plaintiff's claim.

There is no dispute as to the manner in which the accident happened, and both parties claim that all that is presented on this appeal is a legal question involving the proper interpretation of the provisions relating to coverage in defendant's policy of insurance.

### FACTS

Plaintiff's husband, Jimmy Garcia (hereafter, decedent), was the owner of a 1954 Mack, three-axle tractor and was in the business of subhauling for B & G Trucking Company of Santa Fe Springs, California.

On June 21, 1982, decedent drove his tractor and a flatbed trailer, owned and supplied by B & G Trucking Company, and which was attached to his tractor, to the loading area of Ace Export Packing Company in South Gate, California. Decedent was supposed to have 13 pipes, each of which were each 26 feet long, 2 feet wide, and weighed approximately 4,000 pounds, loaded onto the trailer; and then was supposed to transport the pipe to the wharf at Wilmington for foreign export.

The pipe was being loaded onto decedent's trailer by a forklift operated by an employee of Ace Export Packing Company. Decedent was standing on the bed of the trailer directing the loading operation. The declaration of an eyewitness to the accident describes it as follows: "Clint [the Ace Export employee] had caused the forklift to lift the thirteenth pipe above the top of the 12 pipes already laid on the trailer when he tilted the forks of the forklift and the pipe began rolling. The pipe did not stop in between the top layers of the pipe already resting on the truck, but continued rolling toward the decedent. In an effort to escape from the rolling pipe, he jumped to the ground and within a second or less of his landing on the ground, the end of the pipe nearest him struck him and killed him immediately."

The insuring clause óf the automobile accident policy provided in pertinent part that it "DOES HEREBY INSURE the person named in the Application

(hereafter called the Insured) [to wit, decedent] against specified losses as herein limited and provided, from accidental bodily injury *sustained while driving or riding within any automobile, truck or bus for business or pleasure,* during the term of this policy, *provided such bodily injuries are caused by reason of an accident to an automobile, truck or bus . . . .* " (Italics added.)

In granting defendant's motion for summary judgment, the trial court determined that there were no triable issues of fact, and that, as a matter of law, decedent's accident was not covered by the terms of defendant's policy. Thus, the court determined that defendant did not breach the contract of insurance when it denied coverage to plaintiff.

The only question presented on this appeal is whether decedent suffered injury "*while driving or riding within*" any truck for business or pleasure and whether said injuries were "caused by reason of *an accident to* an automobile, truck or bus."

Counsel for the parties have cited no California cases dealing with a policy containing limitations on coverage in the exact terms of the policy before us, and no cases dealing with a similarly limited policy in a fact situation identical to that presented here. However, with counsel's assistance, we have found several cases from other jurisdictions which are instructive as to the meaning of the limiting terms used. In addition, we are guided by general principles applicable in the proper interpretation of insurance policies. ■ Thus, it is settled that an insurance policy is a contract and must be construed in the same manner as other contracts. (*Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 33 [147 Cal.Rptr. 655].) Accordingly, where, as here, no extrinsic evidence was introduced at trial to aid in construction of an insurance policy, the construction presents a question of law; and, on review, the appellate court is free to make an independent determination concerning the policy's meaning. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 502 [99 Cal.Rptr. 617, 492 P.2d 673]; *California State Auto. Assn. Inter-Ins. Bureau* v. *Antonelli* (1979) 94 Cal.App.3d 113, 117 [156 Cal.Rptr. 369].)

■ The scope of a vehicle liability policy is to be construed with regard to the intent and reasonable expectations of the insured (*Interinsurance Exchange* v. *Macias* (1981) 116 Cal.App.3d 935, 938 [172 Cal.Rptr. 385]); and any ambiguity or uncertainty in an insurance policy must be resolved against the insurer. (*Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335].)

■ However, as with any other contract, an insurance policy must be reasonably construed from the language used. An insurer has a right to limit

the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume. (*VTN Consolidated, Inc.* v. *Northbrook Ins. Co.* (1979) 92 Cal.App.3d 888, 892 [155 Cal.Rptr. 172]; *Home Indem. Co.* v. *Leo L. Davis, Inc.* (1978) 79 Cal.App.3d 863, 869 [145 Cal.Rptr. 158].) "[W]hen it has done so, the plain language of the limitation must be respected." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *State Farm Mut. Auto Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 525 [88 Cal.Rptr. 246].)

■ Under the policy before us, coverage was clearly limited by two requirements. Bodily injury must have been sustained (1) while (the insured was) *driving or riding within an automobile or truck*; and (2) said bodily injury had to have been *caused by reason of an accident to* an automobile, truck, or bus. The policy was clearly stamped in large red print across its face: THIS IS A LIMITED POLICY READ IT CAREFULLY and the premium amounted to only $29.50 per year.[1]

In the only California case dealing with language somewhat similar to the limiting phrases considered here, the court ruled that a policy insuring against bodily injuries "caused solely by the collision or upset of any passenger automobile . . ., while the insured was riding or driving therein . . . ." provided coverage for an accident which occurred when the insured braked suddenly, to avoid hitting another car, which caused him to be thrown forward, striking his chest on the side of the steering wheel, from which injury he subsequently died. The court stated (*Miller* v. *United Ins. Co.* (1952) 113 Cal.App.2d 493, at pp. 497-498 [248 P.2d 113]): "Thus it can be seen that the coverage was intended to include the usually anticipated and accepted hazards of motor travel. Such a general clause we think, attempts to afford the insured broad coverage for injuries sustained while 'riding [in] or driving any passenger automobile, motor bus or motor truck' and cannot and should not be narrowly construed. No attempt was made to enumerate specifically all of the situations therein included and from which injury to the insured might result. Hence under a reasonable construction of the contract, coverage is afforded not only as to those injuries which result from the hazards specifically enumerated, when narrowly interpreted,

---

[1] A number of courts have considered the fact that a particular accident policy containing an auto accident provision has a very low premium as an indication that the insurer intended thereby to keep the risk relatively restricted, and such factor has been used as an argument for a strict construction of the term or phrase in issue. (*Lingo* v. *Gulf Life Ins. Co.* (1946) 32 Ala.App. 525 [27 So.2d 697, 698]; *Jones* v. *Federal Life Ins. Co.* (1951) 124 Colo. 106 [234 P.2d 615, 616, 24 A.L.R.2d 1450]; *Industrial Casualty Ins. Co.* v. *Alspaugh* (1942) 112 Ind.App. 569 [44 N.E.2d 321, 322]; *Washington Nat. Ins. Co.* v. *Burke* (Ky. 1953) 258 S.W.2d 709, 710 [38 A.L.R.2d 861]; *Marshall* v. *Washington National Insurance Co.* (1957) 246 N.C. 447 [98 S.E.2d 345, 346].)

but also as to those injuries from other hazards normally incident while driving or riding in an automobile. A cogent illustration of this latter class of hazard is the injury that might occur from being bounced against the roof of a car if one came suddenly upon and crossed a mound in the road without sufficient opportunity to slow the car. In the instant case the decedent was confronted with an emergency situation and took appropriate action of avoidance. The sudden stop necessitated thereby caused the driver's seat to rise up and throw him against the steering wheel of the car with sufficient force to cause the fatal injury. Had the defendant company desired to exclude such an accident from the terms of the policy it could have easily done so in clear and unambiguous language." *Miller* is inapposite here because in that case there is no question but that the insured was actually driving at the time of the accident and it was an accident to the vehicle. However, *Miller* is instructive insofar as it emphasizes that language somewhat similar to that used in the policy under consideration here was intended to include the "usually anticipated and accepted hazards of motor travel." The question remains whether the accident here is such a hazard.

Plaintiff relies heavily on a Texas case which involves an insurance policy containing limiting language almost identical to that used in this case. In *Standard Life & Accident Insurance Co.* v. *Hardee* (Tex.Civ.App. 1959) 330 S.W.2d 544 [78 A.L.R.2d 1040], the court considered an accidental death indemnity policy which provided coverage "against loss from accidental bodily injury sustained while driving or riding within any automobile, truck or bus for business or pleasure during the terms of this policy, provided such bodily injuries are caused solely by reason of an automobile, truck or bus accident." In *Hardee* the insured was engaged in hauling pulpwood using a flatbed, long-wheelbase truck with dual rear wheels. The insured accidentally backed the left rear dual wheel of a truck into a stump hole and was unable to pull the truck out by use of its own power. A pole attached to a wheel to extricate the truck spun around with the spinning wheel as the insured's son attempted to drive the truck forward. The spinning pole struck the insured as he stood on the truck bed, killing him. The court held that the insured was "within" the truck as he stood on the truck bed, and stated (330 S.W.2d 544, at p. 547): "Undoubtedly within the common concept of the meaning of *riding* within a truck is a person standing in the bed of a stalled truck while the driver attempts to move it by its own power, though in fact the truck does not move in response to the driver's effort." In *Hardee* the court stressed the fact that an attempt was being made to move or drive the truck. In the case at bench, the truck was definitely stationary and it was being loaded preparatory to being moved.

In *Brown* v. *Hearthstone Insurance Co. of Mass.* (1963) 19 App.Div.2d 578 [240 N.Y.S.2d 239], the insured died from carbon monoxide asphyxia-

tion while sitting with her boyfriend in an automobile parked on a private road. The emergency brake was set, the shifting mechanism in neutral, the heater and ignition keys set to "on" position, and the gas tank was dry. The court held that the insurance policy, which called for payment if death occurred "While [insured was] driving or riding in any automobile," provided coverage stating: "Protection was purchased from the obvious dangers to which one riding in an automobile may be subjected. It may be concluded from the agreed facts that at the time of death the motor of the vehicle was running and the heater operating. While the car was not moving for an unknown time, *death came from one of the recognized dangers of riding in an automobile.* In the speech of common men the insured was riding in the vehicle when she died." (Italics added.) In *Brown* the car was stationary, but the motor was running, presumably to provide warmth as the couple sat in the car.

In *Dorsey* v. *Fidelity Union Casualty Co.* (Tex. Civ.App. 1932) 52 S.W.2d 775, the court considered a policy which provided coverage where "bodily injury is sustained only as the result of operating, driving, riding in or on . . . an automobile." The insured and a companion went duck hunting. After hunting, they returned to the car and the insured got into the driver's seat preparatory to starting the car. His companion, who was standing outside the car, began to remove shells from his gun, and, in the process, the gun discharged wounding the insured who was seated inside the car. The court held that the injury was covered, stating (52 S.W.2d at p. 777): "Dorsey [the insured] by riding in the car and operating it for the purpose for which it was being used, to wit, the hauling of the men and their guns, was thus brought into close proximity to the gun and exposed to the danger of being injured thereby while the guns were being prepared and loaded into the car. Such danger was *necessarily incident to the use of the car for the purpose for which it was then being used,* and the injury was one of the consequences of such use. We therefore hold that the insured was injured as the result of operating or riding in the car and is entitled to recover the amount stipulated in the policy."

In this case, the main purpose of the truck being used by the insured was the transportation of freight. Thus, loading or unloading of freight was an integral part of the use of the truck. As was said by the court in *Dorsey* v. *Fidelity Union Casualty Co., supra,* 52 S.W.2d 775, 776, while discussing dangers from wholly independent sources to which everyone is exposed, without fault on his part, in using a truck or automobile, "Automobiles and trucks are sometimes used for the transportation of freight, and the operator thereof or those riding therein may be injured as the result of the loading of the freight into the car or the unloading of the freight therefrom. Loading or unloading of freight is a part of the use of the conveyance, and, if one

while so riding in or operating it is naturally exposed to such danger and is injured thereby, he is injured as the result of operating or riding in the conveyance. Panhandle Steel Products Co. v. Fidelity Union Casualty Co. (Tex. Civ. App.) 23 S.W.(2d) 799." In *Dorsey,* however, there was no insurance policy limitation that the accident be one *to* an automobile, truck or bus, thus excluding an accident to the load alone.

Having in mind the rule that an insurance policy must be construed in a manner ". . . 'as will fairly achieve its object of securing indemnity to the insured, . . .'" (*Aas* v. *Avemco Ins. Co.* (1976) 55 Cal.App.3d 312, 320 [127 Cal.Rptr. 192]) we have concluded that standing on the bed of a truck while supervising the loading of freight thereon is within the ambit of the language "while driving or riding within any automobile, truck or bus for business or pleasure." However, our inquiry does not stop there, for this policy contains another limitation on coverage. The injuries, in this case death, must also have been "caused by reason of an accident to an automobile, truck, or bus." Our analysis of the facts of this case requires us to come to the determination that Garcia's truck was not a component in the accident which led to his death. Clearly, the accident occurred when an improperly placed pipe rolled off the truck—the vehicle was not a factor in the accident, and death was not caused by reason of an accident to the truck.

In *Jordan* v. *United Equitable Life Insurance Company* (Mo.App. 1972) 486 S.W.2d 664, 666, the court construed a policy which insured "against loss from 'accidental bodily injury', provided that such bodily injuries are caused 'solely by reason of an automobile . . . accident.'" The insured, a cab driver, while operating his cab, was robbed and shot to death by a passenger. The court concluded that the insured's death was not caused by an automobile accident stating, "In the instant case the policy contained not only the requirement that death or bodily injuries be caused by accident, but also that it be caused 'solely' by an 'automobile accident.' Not every 'accident' that takes place while riding in the automobile is covered. We believe that the exclusionary clause limits the liability of the insurer whenever there is some relationship, nexus or tie between the injury sustained and the vehicle. The automobile must, in some manner, be involved in the accident, and the mere fact that an accident takes place in or near the automobile does not impose responsibility upon the insurer." (486 S.W.2d 664, 667.) While *Jordan* is inapposite on the facts, the analysis concerning the necessity of a nexus between the injury and the vehicle is instructive.

In *Standard Life & Accident Insurance Co.* v. *Hardee, supra,* 330 S.W.2d 544, the case relied on by appellant which involved death to the insured caused by a spinning pole attached to the wheel of a truck which was being used to get the truck out of a stump hole, the court considered the meaning

of the term "truck accident." While the court refused to accept the proposition that the term meant only "a casualty to the truck," still the court required a nexus between the injury suffered and the operation of the vehicle, stating (330 S.W.2d at p. 547): "But undoubtedly within the common understanding of a *truck accident* is the unusual, undesigned, unexpected occurrence of a device temporarily attached to facilitate a truck's movement inflicting damage on being whipped about in the course of the operation of the truck."

In *Hembey* v. *Postal Life & Casualty Co.* (1951) 218 Ark. 702 [238 S.W.2d 647, the insured was a passenger on a bus. He stood up while the bus was moving and asked the bus driver to stop. The bus driver threw on the brakes and the insured was thrown to the floor, suffering bodily injury. He sought recovery under a limited accident policy which covered loss from bodily injury sustained "[a]s a result of an accident to any motor bus [. . .] plying for public hire in regular passenger service while the Insured is riding therein as a fare paying passenger [. . . .]" (P. 648.) The court held that the sudden stopping of a bus was not an accident to the bus.

In the case before us, there was no accident to the truck. A pipe rolling off a truck does not constitute an accident to the truck; it is an accident to the load. Coverage under the policy considered here was limited by language which we find to be clear and unambiguous. ■ "[A]n insurer has a right to draft a policy with a narrow coverage and a small premium fixed on careful calculation of the hazard assumed." (6B Appleman, Insurance Law and Practice (1979) § 4255, pp. 40-42.) ■ Here, the contract was clearly labeled as a limited policy, and the premium was so low that the insured could not reasonably expect that coverage was to be provided in the case of every accident on or near an automobile or truck being driven by insured or upon which the insured was riding. Accordingly, we hold that the trial court properly granted defendant's motion for summary judgment.

The judgment is affirmed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied June 26, 1984, and appellant's petition for a hearing by the Supreme Court was denied August 8, 1984.