[No. B077162. Second Dist., Div. Four. Apr. 30, 1996.]

SAMUEL TUCHMAN et al., Plaintiffs and Appellants, v.
AETNA CASUALTY AND SURETY COMPANY et al., Defendants and
Respondents.

1608

**COUNSEL**

Berman, Blanchard, Mausner, Kindem & Resser, Jeffrey N. Mausner and Paul A. Hoffman for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, David F. Peterson, David L. Jones and Thomas N. Charchut for Defendants and Respondents.

**OPINION**

**HASTINGS, J.**—This is an appeal on an issue of law: application of an exclusion based upon neglect of insureds in connection with a claim of theft made by the insureds to their homeowners insurance carrier. We conclude the trial court erred in applying the exclusion to the facts presented. We reverse and remand for further proceedings.

### BACKGROUND

Appellants, Samuel and Betty Tuchman, are collectors of antiques, having acquired numerous items on various trips to Europe. After restoration, they use the antiques in their home or they store them.

In 1985 or 1986, appellants moved from a 10,000-square-foot home to one with only 3,500 square feet. Because of the reduction of space they were required to store a number of their antiques. They owned vacant improved property at 17421 Ventura Boulevard in Encino and shipped a number of antiques to that property for storage. The antiques were stored in various buildings on the property.

Until sometime in 1986, an employee of Mr. Tuchman, Guadalupe Rangel, lived on the property. After Mr. Rangel moved, the electricity on the property was turned off and no formal security system was added. The Ventura property became "run down." The lot was only partially fenced and it was overgrown with waist-high weeds. Numerous transients loitered on the property and a squatter family lived in the rear single-family residence. Mr. Rangel warned Mr. Tuchman about transients living on the property. Mr. Tuchman was also aware that prior to the incident giving rise to the claim in this suit someone had broken into the garage and had taken personal property. The property had trash strewn about it, and the buildings were old and dirty. The openings to the buildings were boarded over, both inside and out, nailed shut, and there were hasps with locks on the doors.

The Tuchmans built a larger home in Malibu in 1987. Appellants moved into that home, retrieving some of the antiques which had been stored at the Ventura property.

Security Pacific Bank foreclosed on the Ventura property, and on March 9, 1988, held a foreclosure sale. As of that date mortgage payments had been in default for 15 to 18 months. A representative of Security Pacific visited the property shortly after the sale and noticed that the middle group of buildings was locked. On April 7, 1988, Security Pacific caused a letter to be sent to Mr. Tuchman requesting that he remove any personal property from the Ventura property by April 21, 1988. During an April 22 visit, a representative from Security Pacific noticed all of the buildings were open and trash scattered all about.

THE POLICY

Effective May 8, 1987, to May 8, 1988, Aetna Casualty and Surety Company, respondent, issued a standard homeowners policy to appellants for their premises in Malibu.

Under "Section 1—Coverages," the policy provided, as pertinent to this action: "We cover personal property owned or used by any **Insured** while it is anywhere in the world." Under "Section 1—Perils Insured Against," for

"Coverage C Personal Property," the policy provides: "We insure for risk of direct physical loss to property described in Coverage C caused only by the perils named below, unless excepted or excluded by SECTION 1 EXCLUSION: [¶] . . . [¶] 9. **Theft**, including attempted theft and loss of property from a known location when it is likely that the property has been stolen."

Under that portion of the policy titled "Section 1—Exclusion," the following exclusion is pertinent to our discussion: "We do not cover loss resulting directly or indirectly from: [¶] . . . [¶] 5. **Neglect**, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against."

## THE CLAIM

On April 26, 1988, Mr. Tuchman received a telephone call from Mr. Rangel advising him that furniture was missing from the Ventura property. He went to the property and found the doors open and the place in a shambles. After the police were called, Officer James Kemmerling arrived and observed old and dirty buildings and a pickup truck filled with items covered by a tarp. Mr. Tuchman explained that the goods on the truck were all that was left after the theft.

The Tuchmans made a claim to respondent for the "appraised value" of the stolen property. Respondent denied the claim, relying upon the exclusion relating to neglect, quoted above, and also provisions in the policy relating to concealment and fraud.

## THE SUIT

The Tuchmans filed suit against respondent alleging breach of contract and breach of the covenant of good faith and fair dealing. Respondent answered, raising a number of affirmative defenses including "Concealment or Fraud" and exclusion 5 relating to neglect. Respondent also filed a cross-complaint against appellants alleging breach of contract, bad faith, fraud and breach of statutory duty.

At the court trial, the insurance policy was introduced into evidence and no witnesses were called to explain the terms of the policy. When trial concluded, the court issued a brief statement of decision: "There are three issues involved in this case: [¶] 1. Were there valuable antiques stored on the site? [¶] 2. Were those antiques covered? [¶] a. Is coverage barred by neglect of the antiques at the time of the loss or by exposure of the antiques to the

peril of theft? [¶] b. Was there concealment by the Tuchmans that bars coverage in this case[?] [¶] 3. Was there a theft? [¶] Issue 1 [¶] With respect to the first issue, the court finds that antiques were stored at the site. [¶] Issue 2 [¶] With respect to issue 2a, the court finds the burden of proof is on the [respondent] because the lack of coverage is based upon an exclusion that the loss was caused directly or indirectly by plaintiffs' neglect. The court finds that the [respondent] has proven this exclusion beyond a preponderance of the evidence. Therefore, the court finds that the exclusion applies to bar coverage for plaintiffs' claim. [¶] Because the court's finding on the issue of neglect results in judgment for [respondent], the court declines to make determinations on issue 2b, concerning concealment. [¶] Issue 3 [¶] The court finds that there was a theft of some antiques from the property at some time. The court additionally finds that the [appellants] did not steal their own personal property."

Judgment was entered in favor of respondent and against the Tuchmans. This appeal ensued.

## DISCUSSION

The only issue raised by the Tuchmans is one of law: whether exclusion 5, the neglect exclusion, applies as a matter of law to this action. The Tuchmans urge that exclusion 5 applies to neglect by the insureds only at and after the time loss occurs, not to neglect preceding the loss. Respondent disagrees and argues that exclusion 5 prevents coverage as a result of preloss neglect and also urges that there is sufficient evidence to support the finding of the trial court. While we agree with respondent that there is certainly sufficient evidence to support a finding of preloss neglect, we also agree with the Tuchmans that there is insufficient evidence in the record to support a conclusion that exclusion 5 applies to the facts of this case.[1]

Because there was no extrinsic evidence presented at trial to explain the meaning of exclusion 5, or how it would relate to theft coverage, we

---

[1]Respondent has not filed a cross-appeal to preserve any challenges it may have with regard to any other findings or conclusions reached by the trial court. However, respondent requests that we decide the issue of concealment, an issue not decided by the trial court. At oral argument this matter was raised and we pointed out that respondent had failed to perfect a cross appeal. After oral argument, respondent sent us a letter brief citing California Code of Civil Procedure section 906 for the proposition that a cross-appeal is not necessary in order for respondent to raise an issue on appeal. That section allows us to review error claimed by respondent in connection with whether error urged by appellant is prejudicial. That is not the situation presented by respondent. Instead, respondent asks that we place ourselves in the position of the trial court, review the trial transcript, weigh the evidence, and decide the issue of concealment. That is not our role.

review the matter de novo. (*Garcia* v. *Trans Pacific Life Ins. Co.* (1984) 156 Cal.App.3d 900, 903 [203 Cal.Rptr. 325]; *McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 775 [193 Cal.Rptr. 745].)

█ In interpreting insurance contracts, the terms used therein are interpreted in their "ordinary and popular sense" unless used by the parties in a technical sense or a special meaning is given them. If a meaning a layperson ascribes to contract language is not ambiguous, courts will apply that meaning. (*AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253]; *North Bay Schools Ins. Authority* v. *Industrial Indemnity Co.* (1992) 6 Cal.App.4th 1741, 1745 [10 Cal.Rptr.2d 88].) We are well aware of the statement in a number of cases that any ambiguity will be resolved in favor of coverage. That approach was significantly modified in *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545], and *AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at page 822. The present approach recognizes that "[w]hile insurance contracts have special features, they are still contracts to which ordinary rules of contractual interpretation apply. [Citation.]" (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1264.) Moreover, the " 'principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law.' [Citation.]" (*Smyth* v. *USAA Property & Casualty Ins. Co.* (1992) 5 Cal.App.4th 1470, 1474 [7 Cal.Rptr.2d 694].)

A term is ambiguous if it is susceptible of two or more interpretations. (*North Bay Schools Ins. Authority* v. *Industrial Indemnity Co., supra,* 6 Cal.App.4th at p. 1745.) However, coverage terms cannot be analyzed in a vacuum. (*Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1294 [238 Cal.Rptr. 36].) The policy must be construed in its entirety, with each clause interpreted in relation to the others contained therein. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1265; *Smyth* v. *USAA Property & Casualty Ins. Co., supra,* 5 Cal.App.4th at p. 1474.)

█ We have found no cases construing the neglect exclusion in connection with a claim for theft loss. The only cases and treatises we have found discuss the issue of neglect in the context of fire loss. The legislative history of this exclusion also suggests that this exclusion was written with only fire coverage in mind.

Exclusion 5 originated as a requirement to a standard fire insurance policy issued in California pursuant to Insurance Code sections 2070 and 2071. Section 2070, as pertinent, provides: "All fire policies on subject matter in

California shall be on the standard form, and, except as provided by this article shall not contain additions thereto.[2] No part of the standard form shall be omitted therefrom. . . ." Section 2071 then sets forth verbatim the language to be used in a standard form fire insurance policy, including the following: "Perils not included. [¶] This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this company be liable for loss by theft."

Insurance Code sections 2070 and 2071 were initially adopted by Statutes 1907, chapter 267, section 1, page 404 (§ 2071) and section 5, page 410 (§ 2070). There have been amendments since their adoption but the operative language of the neglect exclusion has remained virtually identical except for the language "in neighboring premises," added in 1949. The exclusion from coverage for theft has always been part of this section, although the language was changed to that quoted above, also in 1949. (Stats. 1949, ch. 556, § 2, p. 956.) Thus, a standard fire policy includes exclusion 5 and excludes coverage for "loss by theft."

The policy at issue in this litigation adds coverage for theft as authorized by Insurance Code sections 112 and 122. Section 122 states: "(a) An insurer admitted for all the classes of insurance defined in Sections 102, 107, 108, *112* and 120 is authorized, in addition to the underwriting powers granted by such classes, *to include any and all insurance described in paragraph (b) in a policy which contains fire coverage written on a form complying with either Section 2070 or Section 2071.* . . . [¶] (b) Such insurance is any or all insurance against all risks of physical loss of, damage to, or personal liability . . . for injury to person or *damage to property* incident to, any or all of the following: [¶] (1) The location described and property covered by the fire insurance policy as described in subdivision (a), [¶] (2) *Personal effects.* . . ." (Italics added.) Section 112 authorizes theft coverage: "Burglary insurance includes: [¶] (a) Insurance against loss by burglary or theft or both."

Therefore, the policy terms in question are authorized by a combination of Insurance Code sections 112, 122, 2070 and 2071. However, the origin of the neglect exclusion relates to the standard fire policy which excludes theft coverage. By requiring that the language of section 2071 be included within a policy involving theft, we can infer that the Legislature was aware that the

---

[2]None is pertinent to the facts of this case.

neglect exclusion would be within the terms of the policy. However, that does not translate into a conclusion that the Legislature intended the neglect exclusion to be applicable to theft losses.

The first phrase of the exclusion in the policy issued to appellants is identical to the language of Insurance Code section 2071. However, the second phrase differs. The second phrase of section 2071 states "or when the property is endangered by fire in neighboring premises." This phrase clearly contemplates that the exclusion will relate to fire coverage. In the policy at issue, the phrase reads: "or when property is endangered *by a peril insured against.*" (Italics added.) This language clearly contemplates that the exclusion will apply to more than just fire coverage, including theft. Therefore, we next turn to a review of the authorities construing exclusion 5.

We first look to 5 Appleman, Insurance Law and Practice (rev. ed. 1970) Fire Coverages, section 3115, pages 404-405: "It is often required by the policy that loss is not covered when caused 'by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises.' Such a provision is valid and enforceable, and prevents recovery where loss is proximately caused by a violation thereof. [¶] *This provision has, of course, no application to negligence of the insured before the origin of the fire.* It applies, rather, to situations where no proper diligence was used by the insured at the time of, or following a fire, to save property from destruction." (Fns. omitted, italics added.)

Next, 39 California Jurisprudence Third (rev.) part 1, Insurance Contracts, section 330, pages 805-806, referencing Insurance Code section 2071, states: "*In case loss occurs,* the standard form fire insurance policies require the insured to protect the property from further damage, forthwith separate the damaged and undamaged personal property, and put the property in the best possible order." (Fn. omitted, italics added.) This treatise clearly construes the language of section 2071 to mean that precautions need only be taken when loss occurs.

While not dealing with the neglect exclusion, two California cases lend support to a conclusion that the insured's negligence which causes a fire does not preclude insurance coverage. Both cases arose in the context of a contract between lessor and lessee relating to fire insurance coverage on the leased premises.

The first case is *Fred A. Chapin Lumber Co.* v. *Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613 [11 Cal.Rptr. 634]: "Section 1668 of the Civil

Code provides: 'All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of law.' [¶] The public policy codified in section 1668, however, does not purport to prohibit the parties to a contract from agreeing that one of them shall maintain fire insurance and apply the proceeds therefrom toward the reimbursement of any fire loss covered by such insurance, although caused by the other's negligence. [Citations.]" (*Id.* at p. 616.)

The second case, *Sacramento-Yolo Port Dist.* v. *Cargill of California, Inc.* (1970) 4 Cal.App.3d 1004, 1012 [84 Cal.Rptr. 822], provides: "But Civil Code section 1668 has never been construed as meaning, and certainly was not intended to provide, that an owner or other party interested in property could not insure the premises against damage by fire caused by his own negligence—fortunately. Otherwise, few insured fire claims would be paid without controversy and most would require litigation."

We turn now to the pertinent language of the exclusion in this case, with the operative language which we find important italicized: "Neglect, meaning neglect of the insured to use all reasonable means to *save and preserve property at and after the time of a loss, or when property is endangered* by a peril insured against." In the first phrase the insured must "save and preserve" property "at and after" the time of loss. This language leads to one conclusion only—that the insured must act *at* or *after* the time of the loss to save and preserve the property.

The second phrase requires the insured to use all reasonable means to save and preserve the property "when property is endangered by a peril insured against." We conclude that this language means that the insured must have knowledge of a readily identifiable, imminent, and real peril, endangering the property. Neglect of the insured which creates a situation from which theft may more easily be effectuated is not, by itself, a readily identifiable, imminent and real peril which falls within exclusion 5.

At oral argument, counsel for respondent urged that the neglect exhibited in this case actually borders upon abandonment of the property, a situation for which coverage should not be afforded. First, the parties focused the trial court on the issue of neglect and the findings reflect only that, not abandonment. Second, the focus at trial, and on appeal, related to the actions of the Tuchmans prior to the loss. We have no doubt that exclusion 5 contemplates abandonment as an exclusion where the insured fails to exercise due care "at

and after the time of a loss, or when property is endangered by a peril insured against." However, that was not the issue presented to or decided by the trial court.

## DISPOSITION

The judgment of the trial court is reversed. The matter is remanded to the trial court for further proceedings. Costs are awarded to appellants.

Vogel (C. S.), P. J., and Rubin, J.,* concurred.

A petition for a rehearing was denied May 20, 1996, and respondents' petition for review by the Supreme Court was denied August 21, 1996.

---

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.